The Chancellor.
It was said by Sir William Jones more than two hundred years since, that a case upon a will had-no brother, and therefore that authorities in point in such cases could not be expected. This remark is also true of a great many of the cases which arise at the present time, although the statute of wills as to real property, and the common law as to testamentary dispositions of personal estates, have produced an innumerable progeny since the days of the learned chief justice. In all of these anomalous cases, courts are still compelled to resort' to his general rule of exposition; that is, that the intention of the testator, so far as it can be ascertained from the whole will taken together, must govern. But if that intention cannot be thus ascertained, the will must be expounded according to the rules of the common law which *27 are applicable to conveyances and other written instrumenst. It is upon the principle of carrying into effect the supposed intention of the testator, that all the cases of devises and bequests by implication have been decided. If the particular devise or bequest cannot reasonably be accounted for except upon the supposition that the testator intended to make the corresponding disposition of other parts of his property, or of previous estates therein, the courts will carry into effect the intention of the testator, by implying such corresponding disposition. Thus, if the devisor gives to Ms heirs at law the whole or any portion of his real estate, after the death of hie wife, and there is nothing in the will from which that particular devise can reasonably be accounted for except upon the supposition that the decedent intended to give the wife the use of the property in the mean time, the law supplies the deficiency in the declared intention of the testator, and gives to the wife a life estate by implication. On the other hand, if the particular devise or bequest can be reasonably accounted for, taking the whole will together, without supposing that the testator must have intended to make some corresponding disposition of other parts of the property or previous estates therein, not expressed, such corresponding disposition will not be implied. An implication may also be rebutted by a contrary implication which is equally strong. Thus, if a testator should devise his estate to his wife during her widowhood only, and to his heir at law after the death of his wife, the limitation in the first devise could not be reasonably accounted for, upon the supposition that the testator intended his wife should enjoy the estate after her second marriage, and consequently it would rebut the presumption arising from the last devise, that he intended to give her an estate for life absolutelj'. In such a case, upon the second marriage, the estate would go to the heir at law.
In the case under consideration, the will was made by the decedent a few days before Iris death; probably in his last sickness, and in contemplation of his approaching dissolution. He had at that time but one child, an infant between one and two years of age. There appears to have been a solid *28 tucle on the part of the testator to provide for other children, if he should have any, which I cannot reasonably account for, under the circumstances, except upon the supposition that he expected posthumous issue. The general intention of the testator appears to have been to give to his widow the farm and dwelling house in the county of Westchester during her, life, and to his child or children a corresponding equivalent in legacies out of his personal estate ; and then to divide the residue of his personal estate between the widow and his child or children, one third to the former and two thirds to the latter. The legacies to the daughter, and to his other children if he should have any, were not to be paid to them until they arrived at the age of 21, or were married ; and from the age of his wife it was hardly probable that she would remain single until that time. It is therefore rather an unnatural presumption to suppose the testator intended to give all the residue of his property tó his wife for life, leaving his infant child or children wholly unprovided for in the mean time, and dependant on a step-father for subsistence.
There appears to have been a particular solicitude on the part of the testator to preserve the Westchester property in the family; and it is from coupling the disposition of the remaining two thirds of his estate with this particular disposition of that property that the doubts as to the construction of this will have arisen. Having devised this property to the widow for life, and given to his child or children corresponding legacies as an equivalent, he in the next place bequeathed one third of his remaining personal property to his wife absolutely. He then proceeeds thus : “ And, after the death of my wife, in ease I should have no more children, I give, devise and bequeath unto my said daughter Eliza Letitia, my said dwelling house and farm, together with all the rest and residue of my personal and real estate of every nature and kind whatsoever, to her and her heirs forever. But should I have a son, then and in that case, I give, devise and bequeath to him my said dwelling house, farm,” &c. The literal reading of this clause unquestionably would give the residue of the property, as well as the dwelling house and farm, to the daughter, only after the-death *29 of the mother. But the same literal construction of the following clauses would deprive the widow of the house and farm immediately upon the birth of a son, or of another daughter. I think, however, it is evident that neither of these constructions would correspond with the actual intention of the testator. The expression “ after the death of my wife” was intended to apply to the devise of the house and farm only, and to restrict that devise so as not to revoke the previous devise of the same property to the widow for Ufe. The clear literal interpretation of words in a will may be departed from, if they will bear another construction, where other parts of the will manifest a different intention. And the court frequently rejects the strict grammatical sense to carry into effect such intent of the testator. In the language of Chief Justice Bridgeman, “• wills being made by men in extremis, the law will help and assist them, and will not judge, if any other exposition can be made, that a man who is on his death bed will wilfully and without cause disinherit an infant who never offended.” (O. Bridg. R. 52.) To correspond with the intention of the testator, the clause above referred to should be read as though the words “ after the death of my wife” followed “ my said dwelling house and farm,” and were included in a parenthesis. Or to give effect to that intention, these two devises may be transposed, and the will would then read thus : “ In case I should have no more children, I give, devise and bequeath to my daughter Eliza Letitia, all the rest and residue of my personal and real estate, of every nature and kind whatsoever, and after the death of my wife, my said dwelling house and farm, to her and her heirs forever.
But should I have a son,” &c. The testator by a subsequent clause in the will has provided for the disposition of this same residue of his property both real and personal, except the dwelling house and farm, upon the contingency of his having other children, either sons or daughters. That clause also helps to strengthen the belief that it was the intention of the testator to give to the daughter this residue of his property immediately in the event, which has happened, of her being his sole heir.
*30 There is nothing, however, in this case that can deprive the widow of her dower in the real estate in the city of New-York. Neither the life estate in the Westchester property nor the bequest of one third of the personal estate are given to the wife in lieu of dower. And taking the whole will together, I think it is fairly inferrible that the testator intended she should enjoy her thirds in the real estate not specifically devised to her, as well as an equal third part of the personal estate.
The devise over to the mother, in case of the death of the daughter without leaving lawful issue, appears to be a valid limitation as to the personal estate. In the case of Atkinson v. Hutchinson, (3 Peer Wins. 258,) Lord Talbot decided that the words “ without leaving any issue” must be intended to mean without leaving issue at the time of the death of the first taker, and that it was not therefore in the nature of an estate tail. A similar decision was made by Lord Macclesfield, a few years previous, in the case of Forth v. Chapman, (1 Peer Wms. 664;) where a contrary decision of Sir Joseph Jekyll, .the master of the rolls, was overruled and reversed. (See also Goodtitle v. Pegden, 2 Term Rep. 720. Martin v. Long, Prec. in Ch. 15. Sheppard v. Lessingham, Amb. Rep. 122.) But as to the real estate, it appears to have been the settled law in England long before the revolution, that these words in a will implied an indefinite failure of issue, and therefore as to that part of the property they created an estate tail, which by our statute is turned into a fee simple. (1 Peer Wms. 667. 2 Ves. sen. 180, 616. Cowper, 410. 1 East’s Rep. 229, 263. Comyn’s Rep. 372.) It is not for me to reconcile both of these rules with the principles of common sense, or to furnish any valid reasons for supposing that the testator meant one thing when he used these words in reference to the real estate, and that he meant something different when in the same sentence he used them in reference to his personal estate and chattels real. The legislature has seen the absurdity of these different constructions of the same words in a will, when applied to real or personal estate, and has applied the proper remedy for all future cases. It has also restored the term “dying without issue” to its natural and obvious meaning. (1 R. S. 724, § 22, 23, & 773, § 1, 2.)
*31 A decree must be made, declaring the construction of the will in conformity to this decision, and securing the infant’s share of the personal estate by an investment in public stocks, A * ™ ■ or m some other permanent securities. I he income 01 the in-font’s share, both of the real and personal estate, belongs to her absolutely, and is to be applied to her maintenance and education, so far as it is necessary. The will in this case having presented a fair question for the decision of the court, the complainant is not to be charged with the defendants’ costs. She must pay her own costs out of her share of the estate ; and the costs of the executor, and of the infant defendant, must be paid out of the general residue of the personal property bequeathed to the latter by the will. The decree will also provide for the settlement of the accounts of the receiver and of the administration of the estate, and for the payment of the annuity to Mrs. Conklin, and for the support of the coloreé woman, if necessary.