## COUNTY OF CUMBERLAND.

### (*) DEERING & als. versus ADAMS.

A construction, by which a freehold estate shall be in abeyance, is to be avoided, if possible.

In the construction of a will, the intention of the testator is to govern, when not at variance from recognized rules of law.

This intention is to be ascertained by comparing all parts of the will together.

Upon such a comparison, that construction is to be given, which will best comport with the general objects, and least conflict with particular provisions of the will.

Although a will may not contain any express words of grant to executors, or any technical words of limitation to them, yet, by implication, a fee will vest in them, if upon a view of the whole will, such a fee be indispensable for effectuating the objects of the testator.

When a will creates trusts, which require fer their effectual execution an estate in fee, such estate will be implied.

A will prohibited for twenty years the vesting of the real estate in the heirs at law, who were the minor grand-children of the testatrix, and gave to the executors the entire care and management of it during that period; — required that, from the income, the grand-children should be supported and educated, and the surplus income invested by the executors; — that during the twenty years the estate should remain undivided, and that immediately afterward it should vest in the grand-children; — prohibited any sale of it by the executors, but authorized them to lease it and to exchange a specified part of it for other land, and to execute deeds therefor; — required that, upon the marriage of the female grand-children, the executors should protect the portion of each one of them from the control of their respective husbands; — and provided that, if within the twenty years the grand-children should all die without issue, the estate should be appropriated for relieving the poor of the vicinity, in such manner as the executors should prescribe: — Held that, by construction, the executors took a fee simple in trust, defeasible at the end of the twenty years, or when the trusts created by the will should have been accomplished.

One expressly appointed executor, and also by construction of the will constituted trustee, and having given bond as executor, is considered to have declined the office of trustee, unless he have given bond in that capacity also.

In such case the statute provides that a trustee may be appointed by the Judge of Probate.

On Report from *Nisi Prius*, Wells, J., presiding.

Writ of Entry.

Edward D. Preble, with his family, resided with his mother, Mrs. Mary Preble, in the mansion house owned by her.

He died there, leaving a widow. He also left a son and two daughters, who are yet minors. While his widow and children were still residing in the house, Mrs. Mary Preble died, possessed of a very large estate, which she disposed of by will.

After making several legacies, and specific devises, she appointed these demandants to be executors of the will. The will having been duly approved, they accepted the trust and gave bonds as executors. In the will the testatrix directed that the executors should also be guardians to her said grand-children, and that they should have the entire care and management of her estate for the benefit of said grand-

children ; " that after the payment of the legacies her " whole estate, real, personal and mixed, shall remain and be kept under the care and management of the persons named as executors and guardians aforesaid, to be by them managed with care and prudence for the benefit of my said grand-children, and so to continue and remain for the period of twenty years, from the time of making this will ; during all which period, the whole of said property is directed and intended to continue and be kept in that condition, undivided, under the care and management of the said executors and guardians for the purposes aforesaid, until the said period shall fully expire ; and that the said persons shall have all the necessary powers therefor.

Further provisions of the will were, that so much of the income and profits of my estate, as may in the judgment of the executors and guardians named herein be necessary and proper, shall be applied to the education and support of my said grand-children, and for suitable provisions out of the same, in case of their marriage, and coming to have families before the said period shall elapse ; and the remainder thereof shall be by them duly invested from time to time in some safe and judicious manner, according to their best judgment, to be added to my said estate, until my said grand-children shall become entitled to receive the proportions respectively intended for them by this will. And my further will and direction is, that said executors and guardians shall not have power to sell any part of my real estate, during the minority of my said grand-children, or the period fixed in this will ; but that it may be managed in any other manner so as to become productive, and the interest, income and profits thereof only, applied as before directed ; — also, that, at the expiration of said period of twenty years, the whole of my said estate and property, shall be equally divided among those of my said grand-children, who may then be living, and the lawful issue of any one or more that should then be deceased, in the same proportion that would belong to any such grand-child if living. And if

either of my said grand-children should then be deceased without leaving lawful issue living at the end of the said time fixed, then the whole thereof shall go to the surviving grand-children or grand-child, or lawful issue of any deceased grand-child, in such proportion as aforesaid; or if there be but one surviving grand-child, or issue but of one, then the whole to go to such single grand-child, or his or her issue as aforesaid. And that said estate shall not vest in them or either of them before the end of that period in any manner; — also, that, in case of the marriage of either of my grand-daughters, at any time before they may be twenty-one years of age, or after, it shall be the duty of the said executors and guardians, or whoever may be appointed in their places, and be invested with their powers, to secure or cause the portions of property that may be coming to such grand-daughters, at the expiration of said period of twenty years, or to either of them, to be so secured for their or her own use and benefit, as not to be subject to the control and disposition of their or either of their husbands; and this direction not to be altered by any request or consent of either of such grand-daughters thereunto; — also, that if all my said grand-children should die without leaving any lawful issue in being, before the said period of twenty years shall expire, the whole of my remaining estate and property shall be given and appropriated to constitute a fund for the comfort, relief and welfare of the poor and distressed within the city and neighborhood of Portland, and the interest or income thereof shall be alone applied to those objects and purposes, in such manner as the persons named and appointed as executors and guardians herein, or the major part of them living, shall prescribe and determine, so as to carry this disposition into effect in the manner they shall consider best to accord with my intentions. And to prevent any failure of my will, and to carry out my intention in that respect, in case my said executors should from death, or any other cause, fail to make and fix upon the establishment of any fund or plan for the purpose intended, by the expiration

of the period aforesaid, in that event, the care and manage-
ment of the trust fund so finally to be formed therefor, shall
be vested in and devolved upon the trustees of the charity
fund of the First Parish in Portland, of which my deceased
mother was a founder; and the income of such fund, shall
in that case be applied and appropriated in such manner as
the said trustees, together with the pastor of said parish, shall
think fit and direct, always for the bodily and religious com-
fort and welfare of the poor and destitute that shall be
suitable objects of such charity within the said city of Port-
land and vicinity, as a charitable fund for that purpose for-
ever. And for that purpose that the estate so devised shall
vest in the said First Parish, in trust only, to be disposed of
therefor as aforesaid; unless my said executors shall make
some other prior effectual provision to that end; and that
the said trust shall always attach and adhere to said estate,
in whatever hands the same may be holden, or to whomso-
ever the same might otherwise legally come.

A codicil authorized the executors or a majority of them
to exchange or divide any lands in said Portland, owned by
me, with the heirs of my late brother, James Deering of
Westbrook, from time to time, and in such portions and
manner as they may judge most, judicious, and for the best
interest of my estate; and on such exchange or division,
to execute and deliver deeds of release and quitclaim, and
to receive such conveyances in exchange as may be legally
made in pursuance of such partition or exchange.

The codicil also authorized her executors to lease any
portion or portions of my estate, on such terms, to such
persons, and for such periods of time as they may think
best; and to make, execute and deliver such instruments
as may be legally required to accomplish the several pur-
poses herein appointed.

The widow of Edward D. Preble intermarried with John
M. Adams, who has been duly appointed guardian to the
said children of Edward D. Preble. See 34 Maine, 41.

Adams, with his wife and her said children, have continued to occupy, and still do occupy the said mansion house.

This writ of entry, to recover possession of the mansion house, is brought against Adams by the said executors, in the alleged capacity of "executors and *devisees* in trust under the will of Mrs. Preble."

The case was submitted to the Court, for nonsuit or default, as the principles of law may require.

*Fessenden & Deblois* and *W. P. Fessenden*, for the demandants.

*Adams, pro se*, assisted by *Fox.*

APPLETON, J. — The power of devising is a legal incident to ownership, and its full enjoyments is one of the most sacred rights attached to the possession of property. It gives encouragement to industry. — It stimulates accumulation. — It furnishes new motives to the love of the parent and increases the strength of parental authority. — It adds new incentives to obedience to the child, and provides additional assurances against his misconduct or ingratitude. By extending the power of the present generation over the next, it enables old age to command kindness and respect, and strengthens the ties which bind it to youth.

In construing the various provisions of a will, the intention of the maker is first to be ascertained, and when not at variance with recognized rules of law, must govern. The objects which the testator had in view, if they contravene no existing law, should always be carried into effect.

In examining the will of Mrs. Preble, it is apparent, that it was her intention that the large estates, which at the expiration of twenty years were to vest in her grand-children, should, during that period, be under the control of her executors or those who by the appointment of the Judge of Probate were to succeed to their rights. The heirs at law, who were to become the ultimate objects of her bounty, were to be educated and supported out of the income and profits of the estate. The excess over what might be neces-

sary for that purpose, was from time to time to be invested for their benefit, and be added to her estate, until her grand-children should become entitled to receive the proportions respectively intended for them by the will. The executors are to have the general control and management of the estate, and may lease it for an indefinite period, and the heirs at law, in no event, are to interfere with the estate or its income before the expiration of the twenty years from the date of the will. In case of marriage before that time, suitable provisions are to be made for the support of their families by the executors.

The defendant claims that, on the demise of the testatrix, the fee instantaneously vested in the heirs at law, and that, consequently, the plaintiffs cannot maintain the present suit. By the ninth section of the will, it is provided, "that said estate shall not vest in them, or either of them, before the end of that period in any manner." The clear and express provisions of the will are, that the estate shall not vest during the twenty years limited in the will. If there be a question, where by the will the fee may be during this time, there is none as to where it shall not be. No language can more clearly and definitely express the idea, that the estate shall not be in the grand-children for the period of twenty years, than the terms "shall not vest." More plenary evidence of intention, the language does not allow. Unless, then, *vest* and *not vest* are identical in meaning, if regard be had to the provisions of the will, it is obvious where the fee is not to be till the expiration of the period limited in the will.

But during these twenty years, in which, in most explicit terms, the fee is inhibited from being in the heirs, where does the estate vest? If the title is to be asserted, if real actions are to be brought, if rights of property are to be vindicated, who is to commence the necessary suits, to assert the title, or to vindicate violated rights? If rents are unpaid, if trespasses are committed, who during this time is to enforce the payment of what is due? And in whose name

are damages to be recovered, for any injuries which the estate may have sustained ?

"It is a principle of the highest antiquity, that there should always be a known and particular owner of every freehold estate, so that it. should never, if possible, be in abeyance." 1 Greenl. Cruise, 52. But if the estate is by the will prohibited from vesting in the heirs, and if it vests no where by the will, it must necessarily be in abeyance. Such a construction, then, should, if possible, be given to the whole will, as may prevent the estate either from being in abeyance, or from vesting against the declared purpose of the testatrix.

While the testatrix by her will prohibits the estate from vesting in the grand-children during the period of twenty years, she most explicitly declares, that the executors " shall have the entire control and management of (her) said estate, to be holden and managed by them for the benefit of her grand-children, agreeably to the provisions and directions contained in this present will;" and that " the whole estate, real, personal and mixed, remain and be kept under the care of the persons so named as executors and guardians," and " so continue and remain for the period of twenty years from the making of this will." She further provides that " so much of the income and profits of the estate, as may in the judgment of the executors and guardians named herein, be necessary and proper, shall be applied to the education and support" of her grand-children, and any remainder " shall be duly invested from time to time in some safe and judicious manner," to be added to her estate, " until her said grand-children shall become entitled to receive the proportions respectively intended for them by this said. will." The executors are further empowered " to lease any portion or portions of the estate for such periods of time as they may think best," and to exchange or divide any lands in Portland owned by her with the heirs of her late brother, James Deering," and on " such exchange or. division, to execute and deliver deeds of release and quitclaim, and

to receive such conveyances in exchange, as may be legally made in pursuance of such partition or exchange." "In case of marriage of either of her grand-daughters at any time before they may be twenty-one years of age, or after," it is made the duty of the executors or guardians "to secure or cause the portions of property, that may be coming to such grand-daughters at the expiration of twenty years, or to either of them, to be so secured for their or her own use and benefit, as not to be subject to the control and disposition of their or either of their husbands; and this direction not to be altered by any request or consent of such grand-daughters thereto." In case the grand-children referred to should die without issue, before the expiration of twenty years, then the whole estate is given and appropriated to constitute a fund for the poor of Portland and vicinity, and the income or interest is to be applied to those objects and purposes, in such manner as the executors shall prescribe and determine, and in case of any failure on their part to carry this portion of the will into effect, it is provided that the care and management of the trust fund so to be formed, "shall be vested in and devolved upon the trustees of the charity fund of the first parish," and "the estate so devised shall vest in the first parish in trust only, to be disposed of as aforesaid, unless the executors shall make some other prior effectual provision to that end."

If the estate were to be deemed as having vested in the heirs, on the demise of the testatrix, then all control over it will have passed from her, and the various provisions by which it is to be secured in case of marriage, to her grand-daughters, or in the event of their death without issue within twenty years, to vest in the first parish, in trust, for the objects of the will, become ineffectual. If the fee descends to the heirs, then the executors will be unable to secure the estate to the grand-daughters, or by any act of theirs, withdraw it from the control of the husbands, so far as they may legally have any. If they all should die within twenty years, the estate would descend to their heirs, and

the contingent bequest would entirely fail. If the estates were vested in them, they would follow the general law of descents. But the will provides that it shall not vest in them, and that if they die within a limited time, the estate shall not go to their collateral heirs, but to a new object of the bounty of the testatrix — the poor and distressed within the city of Portland, and its neighborhood. If the estate vests, and the fee passes to the heirs on the death of the grandmother, some of the provisions of the will must inevitably be defeated.

The intention of the testatrix must be gathered from all parts of the will, and such a construction must be given, as may best comport with its general objects, and as will least conflict with particular provisions. It is clear that no fee is given in express terms to the executors as trustees. If it be deemed in them, it must be by implication and for the more effectual compliance with the wishes of the testatrix. When there is an express devise, there is no occasion of resorting to implication. It is only when words of devise are wanting, that this necessity ever arises. "Before an implication is raised," observes Sir W. GRANT, in *Pullen* v. *Randall*, 1 Jac. & Walk. 196, "there must be an absence of express devise, and in opposition to a devise it can never be raised." "If" says WALWORTH, Ch., in *Rathbone* v. *Dyckman*, 3 Paige, 27, "the particular devise or bequest cannot be reasonably accounted for, except upon the supposition that the testator intended to make the corresponding disposition of other parts of his property, or of previous estates therein, the Court will carry into effect the intention of the testator, by implying such corresponding disposition." A devise of such an estate will be implied, as will effectuate the purposes of the will. "The result of the authorities is," says KENYON, C. J., in *Doe* v. *Applin*, 4 T. R., 89, "that the Court is to put such a construction on the whole of the will as will best effectuate the general intention of the devisor, contrary to one of the limitations, if a general principle will defeat the general intent." It is

well settled, that when there are trusts to be executed, which require for their effectual execution an estate in fee, it will be implied. *Oates* v. *Cooke*, 3 Bur. 1686. So it has been held, that a legal estate passed to the trustee, though there was no direct devise to him nor to trustees to preserve contingent remainders. *Doe* v. *Homfray*, 33 E. C. L., 55.

Much reliance has been placed on the case of *Schauber* v. *Jackson*, 2 Wend. 14, which in some very essential particulars resembles the case at bar. There the testator, after giving his son twenty shillings for his birthright, in express terms excluded this son from having any further claims, and as being his heir at law, or by any other pretext, pretence, color or show whatsoever. The Chancelor held that "there being no good devise of the legal estate, either to the children or to the executors, it could not prevent the descent of the estate upon the heir at law, who, in such case, holds the same in trust for those entitled to the proceeds thereof under the will, until the execution of the power of sale." This view of the law is controverted with much ability by Oliver, Senator. Here the "intent," says he, "is clearly and pointedly expressed, that his heir at law, as such, should be debarred from any claim or pretence to his real estate; and for that purpose a disinheriting legacy was bequeathed to him to be paid by the executors. How then could the legal estate pass by descent to the heir, without directly violating the plain meaning and direction of the will? Was it necessary that it should so pass, in order to carry into effect any of the provisions of the will? Surely not; for vesting the legal estate by implication of law in the executors, places the entire legal control in the hands of persons to whom it was the declared intent of the testator to confide the disposal thereof, to the use and purposes directed by his will, without infringing the legal or equitable rights of any person beneficially interested therein." So, in the present case, if the fee vests in the heirs at law, the plain language and obvious meaning of the testator is disregarded. If it

were to be deemed as conferring on them a trust estate, then it would make them the depositaries of the legal estate, for the fulfilment of trusts which are confided to the executors, which trust estate, after a certain time, is to cease, and the heirs then to hold the estates discharged of all trusts. Neither of these views do we deem correct.

The argument, that the heirs may be disinherited, cannot be considered as entitled to much consideration. The time in which their rights are to become vested, is only postponed. They take when and as the testatrix intended. If those for whom she intended the estate should decease before it should vest in them, it will then vest where and as it was the design of the testatrix it should. And only upon the construction we have given to her will, can such be the result.

It follows then, that the executors take under the will a fee simple estate in trust, defeasible at the end of twenty years, or when the trusts in the will shall be complete and ended.

The plaintiffs claim to recover as trustees. While the estates are thus devised in trust, and a trust estate is created by and under the will, still it does not necessarily follow, that this suit can be maintained. R. S., c. 111, § 1, requires, that trustees before entering upon the duties of their trust, shall give a bond with certain prescribed conditions. The duties of executors and trustees are separate and distinct, and separate and distinct bonds must be given. The bonds given by executors will not protect the estate against the non-feasance or misfeasance of the trustees, though they be the same individuals. No bonds have been given by the plaintiffs as trustees. The bond required by statute not having been given, the plaintiffs cannot maintain this action. *Groton* v. *Ruggles*, 17 Maine, 137; *Williams* v. *Cushing*, 34 Maine, 372. The same statute, § 3, provides, that when a trustee neglects to furnish the required bond, the Judge of Probate shall allow a time within which it must be filed. If not filed within the time allowed, he is considered as

having declined the trust. If those appointed trustees by will, decline or resign the trust or die, in case no adequate provision is made for supplying the vacancy, it then, by § 7, becomes the duty of the Judge of Probate, "after notice to all persons interested," to appoint a new trustee to act alone or jointly with others as the case may be. It is thus apparent that the interests of all are protected by the provisions of the statute. *Plaintiff's nonsuit.*

SHEPLEY, C. J., and TENNEY, J. concurred. HOWARD, J., concurred in the result.