[No. 3,712.]

IN THE MATTER OF THE ESTATE OF MATTHEW DELANEY,
DECEASED.

WILL DEVISING LAND IN TRUST.—A will, in which the testator devises his
lands to his executors nominated in the will, to be held by them in trust
for purposes named in the will, gives the fee of the land to the exec-
utors to be thus held in trust.

IDEM.—If the testator devises all his lands to his executor in trust, and
makes provision in the will for the support of his wife, and she re-
nounces her rights under the will, and the Probate Court sets off to her
an undivided one half of the property, because it was common property,
this does not extinguish the trusts declared in the will, nor divest the
executor of the fee in the remaining portion of the property.

WHEN EXECUTOR MAY SELL REAL ESTATE.—If the will directs the exec-
utor to sell the real estate left by the testator, he may sell without pro-
curing an order of sale from the Probate Court.

CONFIRMATION OF SALE BY AN EXECUTOR.—An approval by the Probate
Court of an executor's accounts, in which he has charged himself with
money received from the sale of real estate, is not a confirmation of such
sale, nor is a clause in a decree of distribution, confirming and approv-
ing all the acts of the executor, a confirmation of such sale.

WHEN EXECUTORS SALES NEED NOT BE CONFIRMED.—If the will devises the
real estate of the testator to the executor in trust, for purposes men-
tioned in the will, and directs him to sell said real estate; sales made by
him as executor do not require to be confirmed by the Probate Court.
If the testator devises his land to his executors in trust, and directs the

executor to sell the same, and does not speak of dispensing with an order of the Probate Court directing the sale or confirming it, the executor may sell without such orders.

DEVISE OF LAND TO EXECUTOR AS TRUSTEE.—The testator, when he devises his lands in trust, may nominate the trustee, or any other person his executor; and if he devises the lands to the same person that he appoints executor, the executor will take and hold the lands in the same manner and capacity that a trustee would.

APPEAL from the Probate Court of the City and County of San Francisco.

Matthew Delaney died at San Francisco on the 19th day of December, 1865, leaving him surviving his wife, Mary Delaney, and three children, Edward J. Delaney, Cecilia M. Delaney, now Cecilia M. Wynants, and the appellant, Mary A. Delaney, now Mary A. McCurrie, wife of J. P. McCurrie, who are the only heirs of the deceased.

On the 30th of May, 1865, said Matthew Delaney made his will, in which, after making several specific devises, he gave and devised to his executors the residue of his estate in trust, with directions to sell certain real estate therein described, and to pay out of the proceeds of such sale—

1st. All his lawful debts.

2d. To his daughter, Mary A. Delaney, and others, bequests to the amount of four hundred and twenty dollars.

3d. That his executors should invest the balance of such proceeds of sale, with all moneys that should come into their hands, and keep the same invested in some safe manner, upon interest, and to pay out of such investment to his wife, Mary Delany, thirty dollars a month for the first twelve months next succeeding his death, and after the said period of twelve months, fifty dollars a month during her natural life. That after paying the monthly instalments to his wife, the surplus of interest should be divided every three months, giving to his wife one quarter of such interest, and the other three quarters to be equally divided among his surviving children; on the death of his wife the balance of any money or real estate remaining to be equally divided among his surviving children. Edward J. Delaney and George Kavanagh were nominated executors in the

will, and in the absence or inability of said George Kava-
nagh to act as executor, Edward J. Delaney was appointed
sole executor, with full power to act in every respect.
The will made no mention of waiving orders of the Probate
Court directing sales, or confirming sales when made; nor
did it speak of probate proceedings.

On January 11th, 1866, the said will was duly probated
at San Francisco, and on the 22d of that month, letters tes-
tamentary were issued by the Probate Court to Edward J.
Delaney as sole executor, Kavanagh declining to act.

On July 16th, 1866, Mary Delaney, the widow, filed her
renunciation in writing in the Probate Court, reciting that
all the property of the testator was common property, and
that she desired to assert her rights of common property,
and that she renounced any and all right, title, or interest
she might have to said estate, and released said estate from
any claim she might have under said will.

On August 16, 1869, a decree was made by the Probate
Court, on the petition of the widow, distributing to her one
undivided half part of the real estate of which the testator
died seized, except the homestead, which had been pre-
viously set off to her.

On May 18, 1871, the estate being in condition to be
closed, Mary A. McCurrie, the appellant, filed her petition
for distribution of the estate, claiming that by the renunci-
ation of the widow and her election to take one half of the
common property, that portion of the estate devised to the
executors in trust became subject to distribution among
the heirs at law in the same manner as if the said Mat-
thew Delaney had died intestate, and praying among other
things that one sixth of all the property held in common
by said widow, the petitioner and the other heirs, and
which property is described in the petition, might be set
apart and distributed to her.

On the hearing of the petition the counsel for the execu-
tor offered in evidence five deeds, dated respectively April
3d, 1867; July 28, 1869; December 18, 1869; March 16,
1870; September 15, 1870, from Edward J. Delaney as exec-
utor, and Mary Delaney the widow of deceased, to differ-

ent parties, purporting to convey a large part of the lands described in the petition for distribution, which lands are a portion of the residue of the estate devised by deceased to his executors in trust; one sixth part of which are claimed by appellant as heir at law of deceased.

No application had been made to the Probate Court for the sale of this property; no order of sale had been made therefor; no return of sales had been made; nor had there been any confirmation of any of the sales, or application therefor.

The portions of the will most material to the questions here involved are as follows, viz:

"Fifth. I give, devise and bequeath to my executors hereinafter named, all and singular, my property, real and personal, wherever situated, which remains after satisfying the foregoing provisions, in trust nevertheless, and to and for the following uses and purposes, viz: I direct my executors to sell all and singular the following described property belonging to me" [here follows a description of it,] "and convert the same into cash; and I direct my executors to pay out of such proceeds of sale all my lawful debts, whether to government or individuals. I direct my executors to pay out of such proceeds of sale the following" [here designating the sums and persons.] "I further direct my executors to invest the balance of such proceeds of sale after paying the foregoing bequests, with all moneys that may come into their hands, and keep the same invested in some safe manner upon interest, as in their judgment may seem best; and I direct my executors to pay out of such investment to my wife, Mary A. Delaney, the sum of thirty dollars, for each and every month during the period of twelve months next succeeding my death, and after the said period of twelve months, I direct my executors to pay to my wife, Mary Delaney, the sum of fifty dollars, for each and every month during her natural life.      *      *      *      *

"And I further direct my executors that after paying the monthly instalments to my wife, I desire that any surplus of interest should be divided every three months, giving to my wife, Mary Delaney, one quarter of such interest, and

the other three quarters to be equally divided among my surviving children.

"I desire and direct my executors that, upon the death of my wife, Mary Delany, the balance of any money or real estate remaining in their hands shall be divided equally among my surviving children."

The introduction of the several deeds in evidence was objected to on behalf of Mary A. McCurrie, on the grounds of irrelevancy, incompetency and inadmissibility; that the sales had not, nor had any of them been confirmed; that the sales and each of them, were without notice or authority from the Court; and that no report for confirmation of them, or either of them, was ever made to the Court, nor had any confirmation thereof been applied for, and that said deeds, and each of them, were ineffectual to convey any title.

The Court overruled each of the objections and admitted the deeds severally in evidence, and the appellant duly excepted.

On April 8, 1872, the Court made an order refusing to distribute said estate in accordance with the prayer of the petition of Mary A. McCurrie; and on May 31, 1872, made a decree of distribution, distributing to the grantees named in said deeds of Edward J. Delaney, executor, and Mary Delaney, the property described in said deeds; and finding that said executor during the administration of said estate, under and by virtue of the authority conferred upon him by said will, sold the said lands described in said deeds for a good and adequate consideration. The petitioner appealed.

*Finn & Whittemore,* for the Appellant.

Under the law in force during the pendency of the administration herein referred to, no sale of real estate by an executor is valid, unless confirmed by the Probate Court, under the rules prescribed in cases of sales of real estate by an administrator.

On the first point, the statute, (amendment of 1861 to

section one hundred and seventy-eight of the Probate Act,) explicitly says:

" But in all cases no sale shall be valid unless confirmed by the Court, under the rules prescribed in cases of sales of real estate by an administrator; and before granting such confirmation, the Court may require security, as in cases of sales of land by an administrator."

Here certainly is no ambiguity, but an unequivocal declaration that no sale shall be valid unless confirmed by the Court; there is no exception to the positive rule laid down, and none can be made, for the section applies without reservation to all sales of lands directed by the will to be sold. Even had the testator intended that his executor should have such absolute power of disposition of the estate as is here claimed, and had expressly stated in the will that no reference was to be had to the Probate Court in any proceeding or for any purpose, that even would not oust the Court of jurisdiction, nor would it authorize and validate an act which the law says shall not be valid without the sanction and approval of the Probate Court; for in such cases the statute is absolute and will operate upon all wills, although it might have been the intent and desire of the testator to give his executor full power to convey; for no principle of law is better settled, on grounds of public policy, than that " the intention of the citizen cannot control express enactments of the Legislature or positive rules of property." (Perry on Trusts, 278, and cases there cited.)

But here there is no attempt by the testator to ignore or evade the law; he simply directs that certain property should be sold for certain purposes, and makes no reference to the dispensing with any proceedings. We must presume that he intended his executor to be governed by the law in making the necessary returns of his proceedings to the Court for its approval. ·

There is no expression which shows that unlimited power was given to the executor in the matter of any sale of real estate; not even the giving of bonds is waived; and when a testator in a carefully drawn instrument does not exempt

his executor from the giving of bonds, and does not either expressly or by implication, relieve him from reporting his sales to the Probate Court as required by law, it is too much to assume, *aliunde* that he intended that the property should be quietly sold at private sale at any price and on any terms that might be satisfactory to the executor; that no return should be made, that no security of any kind should be given to the heirs and devisees, and that no opportunity whatsoever should be given to those interested in the estate to object to the inadequacy of the price obtained, or to any proceeding regarding the sale.

Such a construction would place every estate, where a power of sale has been given in the will, completely at the mercy of the executor, to dispose of it on any terms, however unfavorable to the heirs and devisees, without opportunity on their part to object; and that, too, in the teeth of a jealous statute, evidently framed to protect those whom the executor might find it convenient to wrong.

The renunciation of the provisions of the will by the widow, before any sale of the real estate had been made by the executor, rendered the devise to the executors, and with it the power of sale incident thereto, inoperative, and subjected the estate so devised to distribution in the same manner as if no will had been made. By the election of the widow to renounce her husband's will, all devises and bequests made to her are inoperative and void, and the property given to her remains as if no such devise or bequest had ever been made. (*Darrington* v. *Rogers*, 1 Gill. Md. 403; *Young* v. *Young*, 1 Marshall, Ky. 563; *Vance and Wife* v. *Campbell's heirs*, 1 Dana, 229.)

*McAllisters & Bergin* and *E. B. Mastick*, for the Respondent.

Incident to their rights as owners, in the absence of express power to that effect in the will, the executors have the power of sale; but in addition to this, the will expressly makes it their duty to sell. Their estate in the lands and their power to sell them, are wholly independent of their office and character of executors. The estate and power of

sale vested in them, in their character of trustees, and not as executors. Although the two characters of executors and trustees concur in the same persons, they are, nevertheless, entirely distinct in law. It does not follow, therefore, that, as trustees, they may not do what, as mere executors, they would have no power to do. This will readily appear from the following authorities: *Tainter* v. *Clark*, 13 Metc. 224; *Conklin* v. *Egerton*, 21 Wend. 430: *Wills* v. *Cowper*, 2 Ham. (Ohio) 124; *Newton* v. *Bronson*, 3 Kern. 593; *Learned* v. *Bridge*, 17 Pick. 339; *Williams* v. *Conrad*, 36 Barb. 532; *Judson* v. *Gibbons*, 5 Wend. 227; *Bright* v. *Loomis*, 30 Me. 204; *Deering* v. *Adams*, 37 Me. 275.

The devisor created a trust estate in fee and not a mere power. The distinction between an estate in trust and a mere power is marked and well settled. Where executors are clothed with a mere naked power of sale for certain purposes the power ceases as soon as those purposes are satisfied or become impossible, but where an estate in trust is created the estate vests in the trustees, and there remains until disposed of according to the terms of the trust. (*Helmer* v. *Shoemaker*, 22 Wend. 138.)

"If a man," says KENT, "by his will, directs his executors to sell his land, this is but a bare authority without interest; for the land in the meantime descends to the heir at law, who, until the sale, would at common law be entitled to the profits; and being but a naked authority, if one executor dies, the power, at common law, would not survive. But if a man devises his land to his executors, to be sold, then there is a power coupled with an interest; for the executors in the meantime take possession of the land and of the profits." (*Jackson* v. *Schauber*, 7 Cow. 193; 4 Kent 321 margin.)

Counsel for appellant cite and rely upon authorities where the will directed the executors to sell, etc., which, of course, is not the case in the present instance, where the will unmistakably vests the fee in the executors. The renunciation of the widow did not, and could not, divest the executors of the estate they took under the will. The sales were not invalid for want of compliance with the provisions

of the Probate Act. (*Norris* v. *Harris*, 15 Cal. 285, and *Payne* v. *Payne*, 18 Cal. 303.)

By the Court, RHODES, J.:

The petitioner attacks the conveyances made by the executor, on the grounds that it does not appear from the will, that the testator intended to give the executor the power of sale without a compliance with the provisions of the Probate Act, in respect to procuring orders of sale and confirmation; and that such orders were absolutely essential to the validity of the executor's sales and conveyances, without regard to the intention of the testator.   The section upon which reliance is mainly placed is section one hundred and seventy-eight of the Probate Act, as amended in 1861 (Statutes 1861, p. 645).

There are certain propositions which have a bearing upon the principal questions in the case, which may be laid down without further discussion.

The will devised to the executor the fee of the lands in question, to be held in trust for the purposes mentioned in the will.   The renunciation by the widow of the testator of her right under the will, and the order of the Probate Court setting off to her a portion of the property as common property, did not extinguish the trusts declared in the will, nor divest the executor of the fee in the remaining portion of the property.

The executor retained the same power over the portion of the estate remaining in his hands after the renunciation by the widow, and the order setting apart the property to her, that he possessed prior to the renunciation.

Section one hundred and seventy-eight, above referred to, provides that, when property is directed by the will to be sold, the executor may sell, without procuring an order of sale from the Probate Court.   The executor in this case having been directed by the will to sell the property, no order of sale was requisite, even assuming that that section is applicable to this case.

That section further provides that, "in all cases no sale

shall be valid, unless confirmed by the Court, under the rules prescribed in cases of sale of real estate by an administrator." The position of the executor and the purchaser's is that this provision, while applicable to a sale by an executor possessing merely the power of sale, is not applicable to a sale made by an executor, who, as here, holds the fee in trust; and they further contend that if confirmation were necessary, it was had in this case. The executor's accounts, which were filed in the Probate Court, charged him with the sums of money received upon the sales of the several parcels of the real estate in controversy; and on the hearing thereof, the accounts were allowed and approved by the Court, and the orders of allowance and approval not having been appealed from, became final; and it is claimed that the acquiescence in those orders by the parties interested in the estate, amounted to a confirmation of the sales.

The decree of final distribution from which this appeal is taken, contains an order to the effect that " all the acts and 'proceedings of said executor as reported to this Court, and as appearing upon the records, be and the same are hereby ¡approved and confirmed;" and it is claimed that this order ¡also amounts to a confirmation of the sales. Those matters ¡cannot be relied on as working that result. · The confirmation intended by section one hundred and seventy-eight is ·such as is provided for by section one hundred and seventy-one, and is made after a return of sale has been filed, and the parties in interest have had an opportunity to file objections to the sale, and to be heard thereupon.

The only question remaining is whether the provision of section one hundred and seventy-eight, requiring confirmation of sale, is applicable to the sales made by the executor, where the fee of lands is devised to him in· trust. · The question does not appear to have been determined by this Court.

There is a clearly marked distinction between a mere executor (whether his power to sell lands is conferred by the will or by the order of the Probate Court) and an executor to whom the lands are devised in trust to carry into effect the

provisions of the will. In the former case he possesses the power of sale; but in the latter he takes the fee, or any less estate which the testator may devise. In *Jackson* v. *Shuber*, 7 Cow. 194, SAVAGE, C. J., notices this distinction, and says that "in the one case a naked authority is given; in the other an authority coupled with an interest. In the former case the freehold remains with the heir, until a sale by the executors. In the latter, the freehold rests at once in the executors." There are many other cases to the same effect, among which may be cited, *Judson* v. *Gibbons*, 5 Wend. 226; *Conklin* v. *Egerton*, 21 Wend. 432; *Learned* v. *Bridge*, 17 Pick. 339; *Knight* v. *Loomis*, 30 Me. 204; *Deering* v. *Adams*, 37 Me. 264. In the latter case the distinction we have mentioned—the double capacity of executor and of trustee holding the title—was noted and maintained, although it was held that the executor took the fee by implication. The testator may devise his lands to a trustee to affectuate any purpose expressed in the will, but the trustee does not become the executor, by the mere fact of the devise in trust. The testator may nominate the trustee, or any other competent person as his executor; and if he devises the lands to the same person that he appoints as his executor, the executor will take and hold the lands in the same manner and capacity that a trustee would, had the lands been devised to him. And it would seem difficult to maintain any distinction on principle between the effect of a devise in fee in that manner, and a conveyance of the fee to the person who was afterward appointed as the executor. It will be seen, on an examination of the statute concerning wills, that an almost unlimited power of disposition of property is left in the hands of the testator—he, of course, not possessing the power to delay or defeat the claims of his creditors—and we see nothing in the Probate Act evincive of a contrary intention.

Our conclusion is that the testator intended to give, and did give the executor the power of sale, without requiring a compliance with section one hundred and seventy-eight of the Probate Act, and that the provisions of that section

are not applicable to the sales of the real estate in question in this case.

Order affirmed.   Remittitur forthwith.

Mr. Chief Justice WALLACE did not express an opinion.

Mr. Justice CROCKETT, being disqualified, did not participate in the decision.