[L. A. No. 1791.   Department One.—September 21, 1906.]

In the Matter of the Estate of ALLEN G. CAMPBELL, Deceased.   CHARLES RUFUS CAMPBELL, Respondent, v. ELEANOR CAMPBELL et al., Respondents, and WILLIAM STEELE et al., Appellants.

WILLS—CONSTRUCTION—LIMITATION UPON POWER OF EXECUTOR TO SELL —POWER OF ALIENATION NOT SUSPENDED.—A will making no devise in trust, and creating no trust other than such as pertains to the office of executrix, and giving her power to sell as executrix, not coupled with an interest, and making limitation upon her power to sell for a fixed period, which may extend beyond lives in being, *is only a limitation upon her power to sell such interests* under the will without previous order of the court, and cannot restrict her statutory power to sell under order of the court when shown to be for the best interests of the estate, and does not operate to suspend the power of alienation by the legatees and beneficiaries provided for in the will.

ID.—CONSTRUCTION OF CODE—SUSPENSION OF POWER OF ALIENATION.— The limitation upon the power of the executrix to sell, suspending it for any period, is not the character of suspension of the power of alienation forbidden by the code.   The prohibition of the code is directed toward the suspension of the power when exercised by those who hold or control the estate or some interest therein.

ID.—VESTED RIGHTS—POWER OF ALIENATION INCIDENT TO OWNERSHIP— VOID RESTRAINT—POWER OF ABSOLUTE CONVEYANCE.—The property of a decedent vests immediately upon his death either in his heirs or in his devisees and legatees; and when vested, without limitations to the contrary, the power of alienation goes with it as a concomitant of ownership.   If the will vests the present title to any interest or estate other than in trust, a provision directly or indirectly restraining such person from alienating it would be void as repugnant to the interest vested.   There is no invalid suspension of the power of alienation, where all of the owners may unite in the conveyance of an absolute fee in possession.   Since the executrix has no interest in the property, the limitations upon her naked power of sale cannot affect this rule.

ID.—OWNERSHIP BY MINORS—LIMITATIONS MADE BY LAW.—The fact that some of the owners of interests are minors, incapable of making a conveyance, except by the intervention of the court, does not bring the case within the prohibition of the code, which is only against limitations imposed upon the power of alienation by an instrument making dispositions of property, and not against limitations made by law upon the capacity of minors to convey.

ID.—POWER OF ALIENATION NOT SUSPENDED BY SALE AND CONFIRMATION.—The delay incident to procuring an order of court for the sale or confirmation of real estate, or by a direction in the instrument to make a sale or alienation of the land after a designated period of time, does not suspend the power of alienation.

ID.—VESTED RIGHTS IN PROCEEDS.—The rights of the several legatees in the proceeds of the lands when sold, although such shares cannot be received, nor the actual sum payable to each be ascertained, until the sales are made, are nevertheless interests which vested upon the death of the testator, the enjoyment only being postponed until the fund out of which payment was to be made should be realized; and the fact that it could not be ascertained' whether residuary interests would receive anything until sufficient sales should be made to satisfy the prior charges does not prevent the vesting of those interests in like manner. The right to the shares vested immediately, subject only to be defeated by the failure of the property to produce sufficient funds wherewith to pay them.

ID.—UNCERTAINTY AS TO SHARES NO OBSTACLE TO VESTING.—The uncertainty as to the shares is no obstacle to the vesting of a right therein before the fund is collected, or the surplus ascertained, or division actually made. A vested right can exist in an individual share as well as in a specific piece of land; and it is not necessary that the share should be ascertained by separation, provided the rule for its ascertainment is established.

ID.—APPEAL BY LEGATEES—TRUST AS TO RESIDUARY ESTATE NOT INVOLVED.—The fact that a trust is created in the wife in the residue of the estate for the benefit of three designated children does not prevent the residue from vesting either in the trustee or in the children as beneficiaries, or in the heirs, and it is unnecessary to determine the validity of such residuary trust where the appellants are the legatees as to whose interests the will was erroneously declared void.

ID.—EVIDENCE—DECREE IN ANCILLARY ADMINISTRATION—SALE OF LAND UNDER WILL—JUDICIAL CONSTRUCTION OF WILL—ESTOPPEL.—Where it appears that the deceased testator was, at the time of his death, domiciled in the county of Riverside, in this state, in which his will was probated, a decree in ancillary administration in Utah, in which land there situated was sold under the will by an administrator with the will annexed and the proceeds distributed, is only conclusive as to the land sold and the distribution of such proceeds;

but it is of no binding force, by way of estoppel, as a general judicial construction of the will to be applied and enforced in this state in the administration of assets within the jurisdiction of its courts.

APPEAL from a judgment of the Superior Court of Riverside County. J. S. Noyes, Judge.

The facts are stated in the opinion of the court.

Hayden & Hayden, Crane & Woodburn Bros., and Miguel Estudillo, for Appellants.

A. H. Stuttsman, Collier & Carnahan, and Purington & Adair, for Respondents.

SHAW, J.—This is a proceeding under section 1664 of the Code of Civil Procedure to obtain a decree declaring the succession to the estate of Allen G. Campbell, deceased. The court below held that certain provisions of the will of the deceased, purporting to dispose of a large part of the estate, operated to suspend the absolute power of alienation ·of the property for a period longer than the lives of persons in being at his death, that they were therefore contrary to sections 715 and 716 of the Civil Code and void, and that, in consequence, he died intestate as to his property and that it descended to his legal heirs. The soundness of this conclusion is the particular question in the case. The appellants are beneficiaries claiming under the provisions of the will thus declared to be inoperative.

By the terms of the will the executrix was authorized to sell any property of the estate, at public or private sale, with or without notice, and without any order from the court. The provisions in controversy are as follows :—

"Item. 8. I hereby direct that all my coal and iron mines, situate in Iron County, Utah, shall be held for the price of $300,000; that all my lead, silver and gold mines, situate in Beaver County, Utah, shall be held for the price of $150,000; that all my now patented lead, silver, gold and copper mines, situate in Yellow Pine Mining District, Lincoln County, Nevada, be held for the price of $200,000, and my Brick Consolidated Gold Mines, situated in Vanderbilt Mining District, San Bernardino · County, California, be held for the

price of $500,000 until my said daughter Caroline Neil Campbell shall arrive at the age of twenty-one years, or in case of her death before that time, until she would have arrived at the age of twenty-one years if she had survived, unless said properties are sold before that time at the prices herein stipulated; and said properties as groups, shall be sold, separately or together, when the price herein mentioned or more can be obtained.

"Item 9. When my said daughter, Caroline, arrives at the age of twenty-one years, or would arrive at such age, then all of such properties that may be undisposed of at that time my said executrix shall dispose of, for the best price obtainable and divide the proceeds as hereinafter specially directed. In no case, however, shall such bequests be paid unless derived from the proceeds of such properties as herein mentioned, and the bequests shall be paid fully in the order herein mentioned."

It was further provided by item 12 that the money received after the testator's death from each of the groups of properties mentioned in item 8, either from payments made after his death upon sales made by him before death, or from sales made after his death, should "be divided and paid over as follows": of the first six hundred thousand dollars, four sixths to his three children by his wife, Eleanor, one sixth to his son, Charles Rufus, and one sixth to his nephew, William B. Stanley; of the next two hundred thousand dollars, one half to certain nephews and nieces and one half to Campbell University. By item 13 the next one hundred thousand dollars of such money was bequeathed to his wife, Eleanor, and by items 4 and 14, taken together, the remainder, and all other property not otherwise specifically disposed of, was given to his wife, in trust for their three children, to be held by her for their use until his daughter Caroline reached the age of twenty-one years. Caroline was born in October, 1898, and, hence, will not be twenty-one years of age until October, 1919. It is claimed that the effect of these provisions of the will is to prevent an absolute disposition of the property until after the latter date, unless in the mean time it can be sold at the prices fixed in the will. We cannot accede to this proposition.

The will does not devise the lands to the executrix in trust

with power to sell in execution of such trust, nor create any trust in her, except such as pertains to her office as executrix (*Bank of Ukiah* v. *Rice,* 143 Cal. 272, [101 Am. St. Rep. 118, 76 Pac. 1020]), nor does it, with relation to the supposed suspension of power, create any trust in the land in question here. No estate or property whatever is given to the executrix, and without an estate as its subject there can be no trust. The power to sell is given to the executrix in her representative capacity, and is a naked power not coupled with an interest. (*Estate of Delaney,* 49 Cal. 85; *Auguiscola* v. *Arnaz,* 51 Cal. 435; *Estep* v. *Armstrong,* 91 Cal. 659, [27 Pac. 1091]; *Bank of Ukiah* v. *Rice,* 143 Cal. 272, [101 Am. St. Rep. 118, 76 Pac. 1020]; Chaplin on Suspension of Power of Alienation, sec. 96.) The only effect of conferring such a power by will is to enlarge the legal power of the executrix so that she can sell without previous authority from the court, although not without subsequent confirmation. The condition that, prior to October, 1919, such sales shall not be made unless certain prices are obtained, is a limitation solely upon the express power of sale given by the will to the executrix. It does not and could not apply to or restrict the statutory powers of the executrix to sell under an order of the court whenever it is shown to be necessary to sell or beneficial to the persons interested in the estate to do so. (*Estate of Pforr,* 144 Cal. 121, [77 Pac. 825].) Nor does it suspend or affect the power of the legatees or beneficiaries of the fund to be created under the will, to alienate their respective interests in the fund. It does not purport to operate in any manner upon the interests of the beneficiaries, and therefore, they are left free to dispose of their rights and interests in any lawful mode. The giving of this power of sale with the limitation annexed suspending its full exercise for any period, is not that character of suspension of the absolute power of alienation which is forbidden by the code. The prohibition of the code is directed toward the suspension of the power when exercised by those who hold or control the estate, or some interest therein, and not to provisions limiting the naked power to sell given to one without any interest whatever, such as an executor or agent. The testator was at liberty to either give or withhold the special power to sell, and, if given, to attach to it such limitations as he saw fit. But in whatever form he

chose to leave it, it would not affect the general power of alienation of the estate, either by the executrix under order of the court, or by the persons to whom the property was given. If there is any infraction of the rule forbidding such suspension, it does not arise from the limitation upon the power of the executrix to sell.

The contention of the respondents appears to be that the disposition of the property made by the will is of such a character that it of necessity prevents the alienation thereof by the persons interested, except for the fixed prices, until after October, 1919. This proposition assumes either that, during this period, there can be no alienation except by the executrix under the power given in the will, or that the persons in whom the estate vests at the death of the testator are deprived of such power during the said period. We think this proposition is not maintainable. The property of a decedent vests immediately upon his death, either in his heirs or in the devisees and legatees. (Civ. Code, secs. 1341, 1384; *Estep* v. *Armstrong*, 91 Cal. 659, [27 Pac. 1091]; *Estate of Delany*, 49 Cal. 85.) When property is vested, without valid limitations to the contrary, the power of alienation goes with it as a concomitant of ownership. (Chaplin on Suspension, sec. 61, note 2; *Williams* v. *Williams*, 73 Cal. 102, [14 Pac. 394]; *Toland* v. *Toland*, 123 Cal. 143, [55 Pac. 681]; *In re Winter*, 114 Cal. 188, [45 Pac. 1063].) If the will vests in any person the present title to any interest or estate, other than in trust, a provision directly or indirectly restraining such person from alienating it, would be repugnant to the particular interest created, and consequently void. (Civ. Code, sec. 711.) Hence, since there is no trust created, if the legal effect of the will is to vest the present title to the entire fee in persons ascertained and in being, although different interests or rights therein are given to each of such persons, the interest of each person can be conveyed immediately and the collective transfers of all the interested persons will convey the absolute fee. The power of alienation is not suspended when there are persons in being by whom an absolute interest in possession can be conveyed. (Civ. Code, sec. 716.) Such conveyance may be consummated either by the joint act of all, or by the separate and independent conveyances of the several persons seized of the interests. "Whenever there is in being

a representative for each estate, interest, right and possibility, present and future, vested and contingent, each capable of alienating—if he wishes—the estate or interest represented by him, there can be no suspension. For the various estates and interests constitute amongst them the makings of an absolute fee; and if by releases or conveyances to a common grantee, these can be consolidated in one, the consolidated estate thus formed is, of necessity, an absolute fee in possession." (Chaplin on Suspension, sec. 64; Gray on Perpetuities, sec. 274.) The limitation upon the power of sale given to the executrix does not affect this rule in the least, for the executrix, as we have seen, has not, in her representative capacity, any interest in the property, but only a naked power.

The fact that some of the interested persons are minors, incapable of executing a valid conveyance except by the intervention of the court, does not bring the case within the prohibition. The suspension of power as to the minors' interests, in such a case, would not be made by the will but by the law. The prohibition is against those limitations upon the power of alienation which may be imposed by dispositions of property, and not against limitations made by the law upon the capacity to convey. "The suspension of the power of alienation which is prohibited by statute is such as arises from the terms of the instrument by which the estate is created, and not such as exists outside of that instrument— as a disability of a person in whom an interest is vested, or the delay incident to procuring an order of court for the sale or its confirmation." (*Estate of Pforr,* 144 Cal. 121, [77 Pac. 825].) "The suspension must be by virtue of some provision in the instrument by which the limitation, condition, or estate is created, and the power is not suspended by a mere direction in the instrument to make a sale or other alienation of the land after a designated period of time." (*Toland* v. *Toland,* 123 Cal. 143, [55 Pac. 681].)

It cannot be doubted that the interests created by the will in the property of the estate are all vested interests. No specific disposition is made of the rents, issues, proceeds, or profits of the mines mentioned in item 8, which may accrue during the time between the death of the testator and the sale of the property. The funds arising from these, therefore, fall into the residue disposed of by items 4 and 14, and the right

thereto is thereby vested in the wife as trustee for the desig-
nated children. The respective rights of the several legatees
in the proceeds of the lands when sold, although such shares
of the proceeds cannot be received, nor the actual sum pay-
able to each ascertained, until the sales are made, are never-
theless interests which vested upon the death of the testator,
the enjoyment only being postponed until the fund out of
which payment was to be made should be realized. The fact
that as to those entitled after the legacies to the children and
the nephew were satisfied, it could not be ascertained whether
or not they would receive anything until sufficient sales
should be made to satisfy the prior charges, does not prevent
the vesting of those interests in like manner. The right to the
shares vested immediately, subject only to be defeated by the
failure of the property to produce sufficient funds wherewith
to pay them. "It may be laid down as a general rule that
where, by a will, shares or interests in real or personal estate
to be ascertained by a division, are given, or where the real
estate is directed to be sold and the proceeds divided, the
estate or interest of the devisee or legatee in the property to
be divided or converted is a vested interest before the con-
version or division, and that limitations over to take effect in
case of the death of those first designated prior to the division
or sale must be held to refer to the time appointed for the
division or sale, and not to the period of their completion,
unless the language of the will clearly and unequivocally
expressed an intention that the vesting shall be postponed
until such completion. . . .

"A similar rule is applied to gifts of shares or legacies to
be paid out of a fund or surplus to be collected in or ascer-
tained and divided; and in those cases the interests of the
legatees are held to vest absolutely before the fund is collected,
or the surplus ascertained, or division actually made. . . .
The uncertainty as to the shares is no obstacle to such a vest-
ing; a vested estate can exist in an undivided share as well as
in a specific piece of land; and it is not necessary that the
share should be ascertained by separation, provided the rule
for its ascertainment is established." (*Manice* v. *Manice*, 43
N. Y. 368; *Hone's Executrix* v. *Van Schaick*, 20 Wend. 564;
*Wetherhead* v. *Stoddard*, 58 Vt. 632, [56 Am. Rep. 573, 5 Atl.
517]; *Robels* v. *Carning*, 89 N. Y. 225; *Henderson* v. *Hender-*

*son,* 113 N. Y. 1, [20 N. E. 814]; *Millard's Appeal,* 87 Pa. St. 457; *In re Winter,* 114 Cal. 188, [45 Pac. 1063].)

The bequest of the six shares to the children and nephew is not made to them as a class, as was the case in *Estate of Winter,* 114 Cal. 116, [45 Pac. 1036], but to each severally. Nor is the right to share in the fund contingent, as in that case, upon survival until division take place. The language of the opinions in *Estate of Walkerly,* 108 Cal. 644, [49 Am. St. Rep. 97, 41 Pac. 772], and *Estate of Caverly,* 119 Cal. 409, [51 Pac. 629], was used with reference to the fact, apparent in those cases, that, by the terms of the instruments there under consideration, a trust was created in fee which was vested in trustees absolutely for that purpose, and such trustees were, by the terms of the trust, forbidden to convey within a certain prescribed period, and that, consequently, during that time there were no persons who could convey the present estate. Those cases are distinguished from the present case by the fact that in this case no trust has been created and the interests all vest in persons who can convey immediately.

These respective interests in the proceeds of the contemplated sales, thus vested in the beneficiaries, coupled with the right vested in the wife as trustee to receive the intervening rents or mining proceeds, constitute the entire beneficial interest and estate in the lands. If there remains any other existing estate, right, title, or interest therein, legal or equitable, remaining, it is the barren, formal, legal title for so long a time as may elapse between the death of the testator and the sale. (*Bank of Ukiah* v. *Rice,* 143 Cal. 271, [101 Am. St. Rep. 118, 76 Pac. 1020].) No disposition appears to have been made of this formal title, unless it is included in the residue given to the wife in trust. It is not necessary to determine what has become of it, for, in any case, it is vested, and the will does not directly or indirectly forbid or prevent a transfer of it by the persons in whom it is vested, whether it be in the wife as trustee, in the heirs at law, or in the beneficiaries. All the interests being vested, there being no valid attempt to forbid any persons seized of any particular interests or estates from conveying the same, and the persons in whom they are vested being ascertained, it follows, under the rules we have stated, that a present alienation of the absolute fee is at any time possible, and hence that there is no invalidity in the portions of the will attacked.

We have, so far, treated the case upon the assumption that the disposition of the residue of the estate to the wife, in trust for the three designated children, is valid. It is contended that it is void because it leaves no power of disposition of the *corpus* of such residue in any person in being until the time when the child Caroline arrives at the age of twenty-one years. We do not wish to be understood as expressing any opinion upon the validity of this part of the will. The appellants herein are not interested in the residue, and the validity of the disposition made of it does not affect the validity of their specific legacies, and is not involved in the case as presented on this appeal. If it is invalid, the residue may go absolutely to the legal heirs, but whether so or not, the appellants will first be entitled to receive their respective special bequests or devises. What becomes of the residue after they are paid, is of no importance to them so far as the legacies are concerned.

In view of the necessity of reversing the judgment appealed from and the possibility of another trial, we find it necessary to consider another point presented in the record. The testator was, at the time of his death, domiciled in Riverside County, in this state, and the will was there first probated. Subsequently, the will was admitted to probate in the state of Utah, and ancillary administration was had there through an administrator with the will annexed, appointed by the courts of that state, in which a large part of the land involved in the controversy is situated. The administrator with the will annexed reported to the courts of that state a sale of some of the property there situated, made by him without any order of the court and at a price much less than that fixed by the will, and, of course, within the prohibited period. By regular proceedings for that purpose in the courts of that state, the sale was confirmed. Afterwards, under a decree of the Utah court, regularly made, a distribution was ordered to be made of the net proceeds of this sale to the three children, son, and nephew, named in the first clause of item 12 of the will, and the sums distributed were paid to the several persons accordingly. It is now claimed by the appellants that this judgment of the Utah court is a conclusive adjudication of the validity of the provisions of the will here involved, binding not only upon the courts of Utah, but also upon the courts of this state and upon all the persons concerned in the estate anywhere,

CXLIX Cal.—46

and that it determines, in effect, that the power of sale given to the executrix may be exercised by an administrator with the will annexed, and that it may be exercised by him without regard to the prices fixed in the will and at any time within the forbidden period. To this proposition we cannot agree. The judgment of the Utah court doubtless is conclusive as to the land sold and as to the proceeds distributed under it. Possibly it may be binding as to future sales in that state and as to the construction of the will with respect to property in that state, but upon this point we express no opinion. We are satisfied, however, that it is of no binding force as a general judicial construction of the will to be applied and enforced in this state in the administration of assets within the jurisdiction of the courts. It does not constitute an estoppel against the respondents in the case at bar.

The judgment is reversed.

Angellotti, J., and Shaw, J., concurred.