[L. A. No. 21377. In Bank. Dec. 21, 1951.]

HELEN E. OTTO, Appellant, v. UNION NATIONAL
BANK OF PASADENA et al., Respondents.

George Penney, Dunlap, Holmes, Ross & Woodson and Robert H. Dunlap for Appellant.

Hahn & Hahn, Delbridge, Hamblin & Linton, Leon W. Delbridge and Donald W. Hamblin for Respondents.

EDMONDS, J.—By this action, Helen Otto seeks to terminate an *inter vivos* trust created by her. The appeal is from a judgment which followed an order sustaining general demurrers to her complaint which she failed to amend.

In 1941, Helen Otto, then Helen Wheeler, created an *inter vivos* trust with a corpus consisting of assets in excess of $500,000, which was her separate property. The trust indenture includes a spendthrift provision in favor of the trustor and requires the payment of the income to her for life. Paragraph IV of the declaration of trust provides that upon the death of the trustor, the trust shall terminate, and the

entire trust estate shall be distributed according to the trustor's will. If Mrs. Otto "should fail to exercise this power of appointment," according to the terms of the trust, the corpus shall go "in equal shares to her issue *per stirpes* and if there be no issue to her heirs at law in accordance with the Statutes of Succession of the State of California then in effect. Should any child of Trustor be under the age of twenty-one (21) years upon the termination of this trust and, by reason of Trustor's exercise or failure to exercise her power of appointment herein provided be entitled to have distributed to him or her a portion of the then corpus of the Trust Estate and the undistributed income therefrom, said Trustees shall retain his or her share thereof until he or she becomes twenty-one (21) years of age, when the same shall be distributed to him or her, but said Trustees shall distribute the income of said share accruing after the death of Trustor to or for the benefit of said minor child until he or she becomes twenty-one (21) years of age."

Following the trustor's divorce from John Wheeler, the trustees named in the indenture were removed and the Union National Bank of Pasadena was named successor trustee.

When the present action for declaratory relief and termination of the trust was filed, the trustor was 43 years of age and had two sons, Evans Wheeler, age 22 years, and Gordon Wheeler, age 20 years. Gordon was then unmarried. Evans was married and the father of two minor children, Scott and Stephanie. In her complaint, Mrs. Otto asks for a judgment that she is the sole and absolute owner of all assets of the trust, that the trustee be ordered to transfer and convey to her all assets of the trust, and that it be adjudged that the trust was never valid, or that she has full power of revocation, or that it has terminated by reason of the accomplishment of its purposes.

Upon his failure to appear, the default of Evans Wheeler was entered. The general demurrers of the trustee and the minor children were sustained with leave to amend. Upon the trustor's failure to do so, judgment was entered accordingly.

Helen Otto now argues that the trust was void in its inception because Paragraph IV creates a suspension of the absolute power of alienation in violation of sections 715 and 771 of the Civil Code. Assuming that the trust so suspends the power of alienation, the void portion is not severable from the balance of the trust. But in any event, she argues,

she is the sole beneficiary of the trust and entitled to terminate it.

Insofar as pertinent to the issues of this case, section 715 of the Civil Code provides that the absolute power of alienation cannot be suspended by any limitation or conditiion for a longer period than "during the continuance of the lives of persons in being at the creation of the limitation or condition. . . ." Section 716 declares: "Every future interest is void in its creation which, by any possibility, may suspend the absolute power of alienation for a longer period than is prescribed in this chapter. Such power of alienation is suspended when there are no persons in being by whom an absolute interest in possession can be conveyed."

In the present case, the trustor has created a future interest in a class, designated as "issue *per stirpes*," which includes all of her children in being at her death and the lineal descendants of any deceased child. It is clear, from the language of the trust indenture, that the class may include children born after the execution and delivery of the trust instrument. Unquestionably, therefore, the clause requiring the share of a minor child to be retained in trust until he attains his majority suspends the absolute power of alienation beyond the continuance of ". . . lives in being at the creation of the limitation or condition. . . ." (Civ. Code, § 715.) As this court firmly stated in *Sheean* v. *Michel,* 6 Cal.2d 324, 327 [57 P.2d 127], "If the trust thus attempted to be created is by its terms designed to be continued during the minorities of children born after the delivery of the trust instrument, it is obvious that the instrument creates a suspension of the power of alienation in violation of the provisions of section 715 of the Civil Code." (To the same effect is *Estate of Troy,* 214 Cal. 53, 56 [3 P.2d 930], and see the cases cited therein.)

To avoid the rule of these decisions, the respondents argue that the rule against the suspension of the power of alienation is not violated if, at the expiration of a life in being at the creation of the trust, there are persons in being by whom an absolute interest in possession can be conveyed. Under the terms of the trust here being considered, say the respondents, at the death of the trustor, and in the absence of a testamentary disposition by her, there will be ascertainable persons in being who may unite to convey an absolute interest in possession, although such persons may be minor children

of the appellant for whose benefit the trust is to continue until they reach majority.

However, contrary to the position taken by the respondents, the power of the trustee to sell the trust property and reinvest the proceeds would not have the effect of relieving the trust from the inhibitions of the Civil Code. As stated in *Estate of Maltman*, 195 Cal. 643, 652 [234 P. 898], their argument is fully met by the provisions of section 771 of the Civil Code, which read as follows: "The suspension of all power to alienate the subject of a trust, other than a power to exchange it for other property to be held upon the same trust, or to sell it and reinvest the proceeds to be held upon the same trust, is a suspension of the power of alienation, within the meaning of section seven hundred and fifteen." The absolute power of alienation is equivalent to the power of conveying an absolute fee. (Civ. Code, § 716; *In re Walkerly*, 108 Cal. 627, 647 [41 P. 772, 49 Am.St.Rep. 97].)

The respondents erroneously assume that the minor beneficiaries of the trust might convey their present rights to income and compel the trustee to convey the corpus as directed by them. This, however, they could not do until they attained majority (*Estate of Yates*, 170 Cal. 254 [149 P. 555]), and the principles stated in the Walkerly case, *supra*, at pp. 648, 649, 658, are controlling. Applying the rule of·that decision, the clause of the trust indenture establishing a trust for the minority of the trustor's children is void as creating a suspension of the absolute power of alienation beyond the time permitted by section 715 of the Civil Code.

In a memorandum opinion, the trial court also reached this conclusion. However, it held that the challenged provision is not so inseparably blended with the other provisions of Paragraph IV "that it may not be cut off and the balance permitted to stand." The trustor takes issue with this latter statement. She contends that the rule of severability has no application to the facts of the present case.

In *Estate of Micheletti*, 24 Cal.2d 904, 909 [151 P.2d 833], quoting from *Estate of Willey*, 128 Cal. 1, 11 [60 P. 471], it was said that "valid trusts should not be disregarded because in the instrument creating them one particular invalid trust is declared, unless the latter is so inseparably blended with the others that it cannot be eliminated without destroying the main intent of the trustor, or working manifest injustice

238

to the other beneficiaries.'' █ The trustor correctly contends that this rule has application only to a case in which there are two or more dispositions, some of which are valid and others void. That was the situation in the Willey case, where the trust provided for the payment of income to the trustor for life and, on his death, the income to certain named beneficiaries. The testator also provided that, before making any payments of income under the trust, the trustees should set aside $25 and any further amount that might be reasonably necessary for the care and preservation of a cemetery lot. The gift of income to maintain the cemetery lot was declared to be invalid, but severable from the remaining gifts. Similar applications of the doctrine are found in *Nellis* v. *Rickard,* 133 Cal. 617 [66 P. 32, 85 Am.St.Rep. 227] ; *Estate of Phelps,* 182 Cal. 752 [190 P. 17] ; *Estate of Troy,* 214 Cal. 53 [3 P.2d 930] ; and *Estate of Micheletti, supra.*

█ However, closely allied to the rule of severability and often confused with it is the doctrine of modifying clauses which ''permits a gift to be valid in spite of the imposition of an invalid qualification thereof, if the gift and qualification are verbally separable.'' (Leach, *Perpetuities in a Nutshell,* 51 Harv.L.Rev. 635; and see *Towle* v. *Doe,* 97 Me. 427 [54 A. 1072] ; *Sears* v. *Putnam,* 102 Mass. 5.) Essentially, it is a rule of construction employed to effectuate, insofar as possible, the intention of the trustor. ''The particular ground on which the construction in question is rested is, that the author of the limitations intends the prior absolute gift to prevail, except so far only as it is effectually superseded by the subsequent qualifying one.'' (Gray, The Rule Against Perpetuities [4th ed.] § 423, p. 437; 1 Jarman on Wills [6th ed.], pp. 292-294.)

█ Under the doctrine of modifying clauses, the question is: At the time of creating the trust, had Mrs. Otto known that the qualification by way of the provisions for a second trust during the minority of her children would be declared invalid, what would she have intended? Her intention, insofar as it can be found in the trust instrument, is the controlling factor. Mrs. Otto made a full and detailed arrangement for the disposition of the trust estate. After providing for a life estate in herself, she declared that upon her death the trust should terminate. An absolute gift of the corpus was made by creating a future estate in a class composed of her issue *per stirpes.* The trust instrument provides that if she dies leaving issue and without having exercised her

power of appointment, ". . . the entire Trust Estate, together with any income accrued or undistributed to said Trustor on the date of her death, shall be transferred, conveyed, delivered and distributed in cash or in kind . . . in equal shares to her issue *per stirpes*. . . ." It was only after making this gift of the absolute remainder in fee that she attempted to modify that provision by a subsequent and invalid qualification as to the gift to those of her children who might not, at the termination of the trust, have attained their majority. Clearly, that modification of the otherwise valid gift is verbally separable from the prior absolute gift and can be eliminated without destroying the main intent of the trustor.

However, the trustor argues that such construction is not permitted under section 716 of the Civil Code which provides that every "future interest is void" which may suspend the absolute power of alienation. To strike the qualifying clause, says the trustor, leaves the future interest freed from the restraint upon alienation in the contravention of section 716 which declares that the "future interest," not the restraint, is void.

This argument erroneously assumes that section 716 of the Civil Code precludes the application of any rule of construction. No such intention on the part of the Legislature may be read into the statute. The qualifying clause of the trust instrument did not *create* the future interest. It qualified an interest previously created by the direction to the trustee to convey the entire trust estate to the trustor's issue *per stirpes*. That interest in no way suspends the absolute power of alienation beyond the period permitted by section 715 of the Civil Code. There is no reason for striking down the provision for an absolute gift of the corpus of the trust to the trustor's issue. These are valid remainder interests, and the trustor is not the sole beneficiary of the trust.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Schauer, J., and Spence, J., concurred.

TRAYNOR, J.—I concur in the result reached in the majority opinion. I do not agree, however, that the trust instrument violates the rule against restraints on alienation. (Civ. Code, §§ 715, 716, 771.)

In my opinion the beneficiaries can convey an absolute

240

interest in possession upon the death of the settlor. The settlor has not suspended the beneficiaries' power of alienation by limitations taking effect after a life in being; there is no provision making their interests contingent upon survival until majority or terminating the interest of issue that fail to reach majority. If the settlor does not otherwise dispose of the property by will, her issue will take vested interests in the corpus at her death. Furthermore, the trustor has not restrained the beneficiaries' power of alienation by means of a spendthrift clause as in *Estate of Maltman,* 195 Cal. 643, 646 [234 P. 898]. Unless a trust instrument declares otherwise, the beneficaries are free to alienate their interests. (Civ. Code, § 867; *Fatjo* v. *Swasey,* 111 Cal. 628, 637 [44 P. 225]; see *Moxley* v. *Title Ins. & Trust Co.,* 27 Cal. 2d 457, 463, 471 [165 P.2d 15].)

The fact that some of the issue may be minors and thus incapable of executing a valid conveyance without court intervention, will not make their interests inalienable within the meaning of the statutes. "The prohibition is against those limitations upon the power of alienation which may be imposed by dispositions of property, and not against limitations made by the law upon the capacity to convey." (*Estate of Campbell,* 149 Cal. 712, 718 [87 P. 573].) The minors may be unable to require the trustee to convey the corpus to them (*Moxley* v. *Title Ins. & Trust Co.,* 27 Cal.2d 457 [165 P.2d 15]) during minority, but since the trust does not contain a spendthrift clause, they can convey their interests to a third party and thus transfer an absolute interest in possession. (*Estate of Yates,* 170 Cal. 254, 257 [149 P. 555].)

At the death of the settlor, a life in being, the beneficiaries will thus not be restrained by the trust instrument from conveying their interests in the trust to a purchaser. The purchaser may terminate the trust and discharge the trustee. (*Eakle* v. *Ingram,* 142 Cal. 15 [75 P. 566, 100 Am.St.Rep. 99]; see *Moxley* v. *Title Ins. & Trust Co.,* 27 Cal.2d 457, 465 [165 P.2d 15].) The purchaser will then have the absolute interest in possession required by Civil Code, section 716.

The trust is not within the prohibitions of Civil Code, section 771, which provides, "The suspension of *all* power to alienate the subject of a trust, *other* than a power to exchange it for other property to be held upon the same trust, or to sell it and reinvest the proceeds to be held upon the same trust, is a suspension of the power of alienation, within the meaning of section seven hundred and fifteen." (Italics

added.) In a spendthrift trust, where the beneficiaries cannot alienate their interests, this section would be relevant. It cannot be invoked in the present case, however, for the settlor has not suspended all power to alienate the subject of the trust. There is no spendthrift clause limiting the power of the beneficiaries to alienate their interests upon the death of the settlor.

*In re Walkerly,* 108 Cal. 627 [41 P. 772, 49 Am.St.Rep. 97], on which appellant relies, declared that a trust that might continue longer than the statutory period would violate the code provisions. The court stated that even if it were assumed that the interests of the beneficiary were vested and alienable, a beneficiary "could not alienate his interest within the trust period so as to avoid the statute. Such a trust cannot be terminated or destroyed during the period fixed for the existence, even by the consent and joint act of all the trustees and beneficiaries." (108 Cal. at 649.) The court relied on New York cases. Those cases, however, were based on a New York statute (L.R.S. 730, § 63, now McKinney's Consol. Laws of New York, Real Property Law, § 103) which, until 1903, provided that the beneficiary of a New York trust could not assign or dispose of his interest. By contrast, California beneficiaries of a trust not expressly limiting alienability have been able to alienate their interests since Civil Code section 867 was amended in 1874. (*Fatjo* v. *Swasey,* 111 Cal. 628, 637 [44 P. 225]. See discussion in Hohfeld, *The Need of Remedial Legislation in the California Law of Trusts and Perpetuities,* 1 Cal.L.Rev. 305, 320-328.) After transfer of the beneficial interests, the transferee would be able to terminate the trust under *Eakle* v. *Ingram, supra,* 142 Cal. 15, and would obtain an absolute interest in possession.

The rule against restraints on alienation is not violated simply because of the duration of a trust. The rule is violated only when the beneficiaries are unable to convey an absolute interest in possession within the statutory period. Thus, sections 715 and 771 are a check upon the creation of long-term trusts only when the interests of all beneficiaries do not become alienable within the allowable period of suspension. (See Turrentine, *Suggestions for Revision of Provisions of the California Civil Code Regarding Future Interests,* 21 Cal. L.Rev., 1, 19-22.)

The statements or holdings in the cases relied on in the

majority opinion that a trust that continues beyond the statutory period must always fail are not justified under the Civil Code and should be disapproved or overruled. Of course, if restrictions in the trust instrument prevent transfer of an absolute interest in possession, alienation is restrained in violation of the statute. But when, as here, the interests vest at the expiration of a life in being at the time of creation of the trust, and the settlor has not restrained the beneficiaries' power of alienation by means of a spendthrift clause, there is no restraint on alienation.

Carter, J., concurred.

Appellant's petition for a rehearing was denied January 17, 1952.