[Civ. No. 36482. Second Dist., Div. One. Jan. 4, 1971.]

J. LAMBERT LEVY, Plaintiff and Appellant, v.
CROCKER-CITIZENS NATIONAL BANK, Defendant and Respondent.

**COUNSEL**

Loeb & Loeb and Alfred I. Rothman for Plaintiff and Appellant.

Walzer, Weinstock, Manion & King and Harold Weinstock for Defendant and Respondent.

**OPINION**

**GUSTAFSON, J.**—Plaintiff is the trustor (or settlor) of two trusts which he claims he has the right to terminate. He appeals from a judgment in favor of the trustee that the trustor has no right to terminate either trust.

Plaintiff's maternal grandmother on May 29, 1937, created a trust, the life beneficiary of which was plaintiff's mother and a remainderman of which was the plaintiff. The grandmother died June 11, 1938, leaving a will by which plaintiff received a remainder interest in a testamentary trust contingent upon his surviving his mother.

Plaintiff became 21 years of age on October 26, 1956. Thereupon his mother's attorney, at her request and without consulting plaintiff, prepared the two trust instruments here in question, the corpus of one trust being plaintiff's remainder interest under the living trust of his grandmother and the corpus of the other being his remainder interest under the testamentary trust of his grandmother. Plaintiff executed each declaration of trust October 30, 1956.

So far as it is pertinent here, both declarations of trust are identical.

Plaintiff is the trustor and the beneficiary of the net income for his life. Upon his death, the corpus is to be distributed pursuant to his exercise of a testamentary general power of appointment, or, in default of such appointment, to his then surviving lawful issue *per stirpes* or, if he has no surviving issue, to the then surviving lawful issue of his mother.

Plaintiff's testimony concerning his intent and the circumstances existing at the time of his execution of the trust instruments was objected to by the trustee (the only defendant) on the ground that the trust instruments were clear and unambiguous thus precluding extrinsic evidence of the meaning of the words used. The court later struck plaintiff's testimony in this respect presumably upon the ground urged by the trustee. ■ It is now well settled that no matter how clear and unambiguous language may appear to the reader, extrinsic evidence is admissible for the purpose of ascertaining what was meant by the person using the words in question. (*Delta Dynamics, Inc.* v. *Arioto* (1968) 69 Cal.2d 525 [72 Cal.Rptr. 785, 446 P.2d 785]; *Estate of Russell* (1968) 69 Cal.2d 200 [70 Cal.Rptr. 561, 444 P.2d 353]; *Pacific Gas & E. Co.* v. *G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33 [69 Cal.Rptr. 561, 442 P.2d 641].) The extrinsic evidence, however, may not show that what was meant by the words used was something to which, under all of the circumstances, the words are not reasonably susceptible. Because of that limitation, there was no error in striking plaintiff's testimony.

Plaintiff testified that it was not until his mother's death in August of 1962 that he learned that the documents which he signed in 1956 were trust instruments. Until his mother's death, he received no income (since his mother was the income beneficiary of his grandmother's trusts) from his trusts to alert him to the fact that they existed. At the time he signed the trust instruments, he was living at home and he signed without reading them at the request of his mother and upon her assurance to him that they were documents for his protection.

Plaintiff's testimony would have been relevant in an action to rescind the trust instruments on the ground of mistake or undue influence. "The creation of a trust being substantially a unilateral transaction, the mistake of the settlor, not shared by the trustee or beneficiary, is sufficient to avoid the transfer if it induces a conveyance whose consequences the settlor does not understand or intend." (Nossaman & Wyatt, Trust Administration and Taxation (2d ed. 1969) § 21.12.) "Upon the question whether the settlor has been induced to create the trust by undue influence, the following factors may be of importance: (1) whether and to what extent a fiduciary or confidential relationship existed at the time of the creation of the trust between the settlor and the person persuading him to create the trust;

(2) whether it was the trustee, the beneficiaries or a third person who persuaded the settlor to create the trust; (3) the improvidence of the settlor in creating the trust; (4) whether the settlor when he created the trust had independent legal advice; (5) the age, health, business competence, intelligence of the settlor; (6) whether the trust is of such a character that it would be natural for a person in the position of the settlor to create it when not unduly influenced by others." (Rest.2d Trusts, § 333, com. c.) The parties stipulated that the trust assets are worth about $1,500,000 and that whenever the trustee makes a sale of assets at a gain, plaintiff (who is considered the sole owner of the trust assets for tax purposes) must pay the capital gains taxes, but the entire proceeds of the sale remain as part of the trust corpus. No logical reason for plaintiff to have created irrevocable trusts comes readily to mind. There was no danger of his mismanagement of the property because the property was then, and for six years thereafter, managed by the trustees of the trusts created by his grandmother. A living trust removes the assets thereof from the probate estate of the trustor and thus eliminates attorney fees and executor fees, but a revocable trust would serve the same purpose. Moreover, the lack of plaintiff's power to appoint by deed prevents him from reducing state and federal death taxes by gifts of the trust assets, free of tax or at lower rates, made during his life.

But here the action was not to rescind the trust instruments on the ground of mistake or undue influence, but rather an action by the trustor, assuming the validity of the trust instruments, to terminate the trusts. Plaintiff's testimony that he did not know what was in the documents he signed is not evidence that he intended by the words used therein not to make a gift to anyone.

It is conceded that if a trustor is the sole beneficiary of a trust, he may revoke it even though by its terms the trust is irrevocable. (Rest.2d Trusts, § 339.) If there are other beneficiaries, however, consent of all beneficiaries is generally necessary to revoke the trust. (Rest.2d Trusts, § 340.) Putting aside for the moment the existence of a testamentary power of appointment in the trustor, the question is whether the surviving lawful issue of the trustor, whose existence and identity will not be known until the trustor dies, are beneficiaries. Plaintiff relies heavily upon *Bixby* v. *California Trust Co.* (1949) 33 Cal.2d 495 [202 P.2d 1018] in contending that persons in the described class should not be considered beneficiaries. In *Bixby* plaintiff was the trustor and the life beneficiary and the trust provided that upon his death the corpus would be distributed to his heirs at law in accordance with the laws of succession of the State of California then in effect. The court held that plaintiff was the sole beneficiary and entitled to revoke the trust because his use of the words "heirs at law" does not manifest an intention "to make a gift to any particular person but indicates only that upon his

death the residue of the trust property shall be distributed according to the general laws governing succession." Plaintiff in the case at bench argues persuasively that his use of the words "surviving lawful issue" should likewise be held not to manifest any intention to make a gift to any particular person. The only answer to plaintiff's argument is that the authorities binding upon us compel a contrary result.

In *Gray* v. *Union Trust Co.* (1915) 171 Cal. 637 [154 P. 306] the trustor created a trust of which she was the life beneficiary, the corpus to be distributed at her death to her heirs at law according to the laws of succession of the State of California as they existed on the date the trust was created. The court held that the trustor was not the sole beneficiary of the trust and thus was not entitled to revoke it. That case was expressly distinguished in *Bixby* as being one in which "the trustor had indicated an intent to create an interest in a special class of persons and not to provide . . . merely for succession by the general class of persons who would take at death under the laws relating to intestacy."

*Otto* v. *Union National Bank* (1952) 38 Cal.2d 233 [238 P.2d 961] held that a trustor who was the life beneficiary of a trust was "not the sole beneficiary" where the trust instrument provided that upon the trustor's death, the corpus would go "in equal shares to her issue *per stirpes*." Although there was no discussion in *Otto* of why "issue" are beneficiaries but "heirs" are not, it is significant that the court which decided *Otto* was comprised of exactly the same persons as the court which decided *Bixby*.

By statute enacted subsequent to the creation of the trusts here in question there is no longer any "rule of interpretation that a grantor does not intend, by a grant to his own heirs or next of kin, to transfer an interest to them." (Civ. Code, § 1073.) We need not decide whether the application of this statute to plaintiff's declarations of trusts is unconstitutional because we find *Gray* and *Otto* controlling, not *Bixby*.

 The cited California cases are in accord with the weight of authority. Thus it is said (Rest.2d Trusts, § 127, com. b) that "if the beneficial interest is limited to the settlor for life and on his death the property is to be conveyed to his children, or issue, or descendants, he is not the sole beneficiary of the trust, but an interest in remainder is created in his children, issue or descendants."

 We now consider the effect of the trustor's general power to appoint by will. If a trustor reserves a general power to appoint by deed or will, by appointing to himself by deed he becomes the sole beneficiary and obviously can terminate the trust. Plaintiff argues, again quite persuasively, that he has a will, that in all likelihood he will not die intestate and that

there is therefore little likelihood that anyone will take in default of exercise of the power of appointment. The existence of the power, plaintiff argues, manifests an intent not to make a gift to those who would take in default of the exercise of the power of appointment.

But again the authorities compel us to reject plaintiff's argument. Both in *Gray* and in *Otto* the trustor reserved a testamentary power of appointment. While it is true that in neither case did the court explain why the existence of the power did not alter the result which would have been reached had there been no power of appointment, we are nevertheless bound by the decisions in those cases. (See also Rest.2d Trusts, § 127, com. b.)

The trustee's request for the award of attorney fees on appeal is denied.

The judgment is affirmed.

Wood, P. J., and Thompson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 16, 1971.