Filed 12/29/22  Matheson v. Rossi CA1/4
## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| LESLEY MATHESON,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>DAVID B. ROSSI,<br><br>　　　Defendant and Appellant. | A165822<br><br>(Santa Clara County<br>Super. Ct. No.<br>19PR187053) |

David B. Rossi appeals from a probate court order establishing the validity of an irrevocable trust he created with his wife, Lesley Matheson (Lesley).  Rossi argues the probate court erred by deciding the matter without an evidentiary hearing.  We agree and will reverse.

## BACKGROUND

Because this case was decided without an evidentiary hearing, we draw the background facts of this case from Lesley's petition and the trust instrument attached as an exhibit to it.  Rossi and Lesley are married and have three children.  In January 2016, Rossi and Lesley created an irrevocable trust.  The trust states that Rossi and Lesley created it to provide a safety net for Lesley's mother, Joyce Harold Matheson (Joyce), in her

1

remaining years, as well as a safety net for the education of the couple's children, and to minimize taxes on the transfer of wealth to the next generation. To those ends, the trust allowed for the distribution of trust income and principal for the benefit of Joyce and the children's education during Joyce's life. The trust gave Joyce a power of appointment, which allowed her to determine who would receive any undistributed trust income and principal upon her death. This power was limited to the power to appoint the trust assets to Joyce's other descendants and to the creditors of her estate. On Joyce's death, the trust assets were to be distributed according to her appointment, with any assets that were not appointed to pass to Rossi and Lesley's living descendants or, if none, to other named individuals. The trust named Lesley as the initial trustee, with Rossi as first successor trustee, followed by other named successor trustees. The trust was initially funded with a property in Discovery Bay.

In November 2017, Rossi filed a petition to dissolve the couple's marriage. In that dissolution proceeding, he claimed ownership of the Discovery Bay property, as well as other property that had been transferred into the trust. Believing that Rossi would seek to establish the invalidity of the trust, either in the marital dissolution action or in a separate action, in October 2019 Lesley filed a petition under Probate Code section 17200, subdivision (b)(3) to confirm the validity of the trust.

Rossi filed a response and objection to the petition in which he requested an evidentiary hearing. He admitted that the couple had tried to create a trust but alleged that the formation

2

of the trust failed for various reasons. One of the reasons Rossi alleged was mistake. Rossi alleged that Joyce's power of appointment allowed her to transfer trust assets to Lesley, thereby frustrating the trust's stated purpose of ensuring that the trust assets ultimately passed to the couple's children. Rossi also alleged that Joyce had given Lesley a power of attorney that allowed Lesley to exercise the power of appointment.

The court held a hearing, which was apparently not reported as there is no transcript of the hearing in the record. Following the hearing, Lesley filed a reply in which she argued that the power of appointment was not unusual and was plainly and unambiguously stated in the trust, so that Rossi's mistake argument "lack[ed] credibility." Lesley argued that her power of attorney was irrelevant to the validity of the trust, and that if the power of attorney threatened to frustrate the purpose of the trust, Rossi's recourse was to petition to reform or terminate the trust.

Rossi filed a reply of his own, repeating that an evidentiary hearing was required because affidavits and verified petitions cannot be considered as evidence at contested probate hearings. Rossi also elaborated on his mistake theory, alleging that he did not understand the significance of Joyce's power of appointment to the possible detriment of the children or that Lesley could use the power of attorney to exercise the power of appointment to appoint the trust assets to herself. He argued that these allegations raised issues of fact as to his state of mind when he signed the trust, what was communicated to him about the power

3

of appointment, and Lesley's failure to disclose the power of attorney.

Two days before the hearing, Lesley filed a declaration by Joyce stating that the power of attorney only gave Lesley limited powers, which did not include the power to exercise the power of appointment. Attached to Joyce's declaration was a copy of the power of attorney.

At the hearing, a transcript of which is in the record, Rossi's counsel made an offer of proof to the court that at an evidentiary hearing, Rossi would testify that his intention was that the property would pass only to the children. After the execution of the trust, he learned from his counsel and Lesley's counsel that Lesley intended to have the trust assets passed back to her. Rossi therefore reviewed the trust and was surprised to find that Lesley could reacquire the trust property through Joyce's exercise of the power of appointment. Rossi's counsel also said that he wanted to depose the attorney who drafted the trust, to determine how she had explained the power of appointment to Rossi.

Lesley argued that the power of attorney did not allow her to exercise Joyce's power of appointment. She theorized that Rossi was only trying to invalidate the trust to get the trust property back during the divorce. Rossi conceded that the power of attorney might not allow Lesley to exercise the power of appointment, but he reiterated that he was also concerned about Joyce herself using the power of appointment to transfer the trust property to Lesley.

4

The probate court ruled that while Rossi's objections concerned the formation or validity of the trust, Rossi had not raised a legal issue that would support denying the validity of the trust or indicated what evidence he could provide that would affect the determination of the validity of the trust. The court therefore granted the petition and entered an order declaring the trust to be "valid, enforceable, and in full force and effect."[1]

## DISCUSSION

" 'It has long been the rule that in probate matters "affidavits may not be used in evidence unless permitted by statute. . . ." ' [Citation.] '[T]he Probate Code limits the use of affidavits to "uncontested proceeding[s]." ' [Citation.] 'Consequently, "when challenged in a lower court, affidavits and verified petitions may not be considered as evidence at a contested probate hearing . . . ." ' " (*Conservatorship of Farrant* (2021) 67 Cal.App.5th 370, 377 (*Farrant*).) Accordingly, when a party contests a probate petition, the probate court should grant a party's request for an evidentiary hearing. (*Estate of Lensch* (2009) 177 Cal.App.4th 667, 677–678; see also *Dunlap v. Mayer* (2021) 63 Cal.App.5th 419, 425–426 [probate court erred by

---

[1] Rossi asserts that after filing his notice of appeal, he filed a separate complaint in Santa Clara County for rescission and reformation of the trust, which was stayed pending the outcome of this appeal. The record here contains nothing about this separate action, and Rossi has not asked us to take judicial notice of any records from it. Our reversal of the probate court's order to allow Rossi to pursue rescission and reformation of the trust makes it unnecessary to address Rossi's alternative argument that the probate court's order was overbroad to the extent that it would bar this separate complaint.

5

dismissing petition at case management conference based on response to petition, without holding evidentiary hearing].)

These general principles do not mean, however, that a party has an unfettered right to an evidentiary hearing in probate matters. A probate court may properly deny a request for an evidentiary hearing if the party requesting the hearing does not specify the factual issues he or she intends to litigate and the relevant testimony or exhibits he or she would produce. (*Farrant, supra,* 67 Cal.App.5th at pp. 377–378.)

Rossi urges us to review the probate court's denial of his request for an evidentiary hearing de novo because the probate court did not consider any evidence and the interpretation of statutes and application of statutes to undisputed facts are subject to independent review. Lesley argues the standard of review of a denial of an evidentiary hearing is abuse of discretion, based on *Farrant*'s application of that standard. (*Farrant, supra,* 67 Cal.App.5th at p. 377.) We need not decide which standard of review applies, however, because the probate court erred even under the abuse of discretion standard.

Rossi requested an evidentiary hearing to pursue several defenses to Lesley's petition, but we need only consider his defense of mistake. The parties agree that *Walton v. Bank of California, Nat'l Asso.* (1963) 218 Cal.App.2d 527 (*Walton*) sets out the proper standard for when a settlor's mistake will justify rescission or reformation of a trust. "The law is clear that where no consideration is received by the trustor for the creation of an *inter vivos* trust, it can be rescinded or reformed for mistake to

6

the same extent that an outright gift can be rescinded or reformed. (Rest. 2d Trusts, § 333, see com. a; 3 Scott on Trusts (2d ed.) § 333, p. 2424; § 333.4, pp. 2427-2428; see 59 A.L.R.2d 1229.) As Scott, op. cit., states: '[Where] the settlor receives no consideration for the creation of the trust, as is usually the case, a unilateral mistake is ordinarily a sufficient ground for rescission, as it is in the case of an outright gift. It is immaterial that the beneficiaries of the trust did not induce the mistake or know of it or share it. It is immaterial whether the mistake was a mistake of fact or a mistake of law. The mistake may be such as to justify reformation rather than rescission of the trust.' " (*Id.* at pp. 542–543.)

*Walton* relied in part on the second Restatement of the Law of Trusts, but the current version of the Restatement maintains the same rule. (*Walton*, *supra*, 218 Cal.App.2d at p. 543.) It states, "A trust may be rescinded or reformed upon the same grounds as those upon which a transfer of property not in trust may be rescinded or reformed." (Rest.3d Trusts, § 62.)

Rossi identified to the probate court specific evidence to justify an evidentiary hearing on his proposed theory of mistake. His counsel told the probate court that at an evidentiary hearing, Rossi would likely testify that his intention was that the trust property would pass only to the children, that he discovered after signing the trust that Joyce could use her power of appointment to transfer the property to Lesley, and that this was a surprise to him. His counsel further clarified that the intention was not to allow Joyce and Lesley to use the power of appointment to

7

convert the property, which had been owned by Rossi and Lesley as community property, into Lesley's separate property. Rossi's position was that he did not see the power of appointment in the trust and did not agree to it, despite the provision being conspicuous in the trust. In addition to his own testimony, Rossi indicated that he intended to depose the attorney who drafted the trust about how the attorney explained the power of appointment to Rossi at the time.

Even if we defer to the probate court's discretion about the scope of relevant evidence, as Lesley urges us to do by pressing for the abuse of discretion standard of review, we conclude the probate court erred by denying Rossi a hearing at which he could introduce this evidence. His evidence would have helped establish that he made a unilateral mistake about the effect of the trust, in that he did not realize that the trust document he signed would allow Lesley to acquire the trust property indirectly and prevent trust assets from passing to the couple's children. A mistake about the legal effect of a transaction like this can support the legal defense of mistake. (Cf. *Stafford v. California Canning Peach Growers* (1938) 11 Cal.2d 212, 217–218 [mutual mistake about legal effect of contract justified reformation].)[2]

---

[2] Where, as here, the creation of a trust is a unilateral action, a trustor may argue for rescission based on mistake even if the trustor does not read the trust instrument. (*Levy v. Crocker-Citizens Nat. Bank* (1971) 14 Cal.App.3d 102, 104 [dicta].) The law of mistake for unilateral trusts is different in this regard from the law of mistake for contracts. (Hartog & Kovar, Matthew Bender Practice Guide: California Trust Litigation (2022) § 5.49[3]; Rest.3d Trusts § 62 (2003).)

The probate court should have allowed Rossi an opportunity to develop evidence for this defense to the validity of the trust in discovery—in particular, through a deposition of the attorney who drafted the lengthy trust document as to how she explained to Rossi the power of appointment—and present it at an evidentiary hearing.

Lesley's various arguments in support of the probate court's ruling to the contrary are not persuasive. First, she cites two cases that upheld the denial of evidentiary hearings where the proponents of the hearings did not identify the evidence that they intended to introduce. (*Farrant*, *supra*, 67 Cal.App.5th at p. 378; *Estate of Cairns* (2010) 188 Cal.App.4th 937, 951.) She urges us to reach the same result here because Rossi did not identify any documentary evidence and did not point to testimony to explain how Lesley intended to have the property passed back to her. Rossi did not mention any documents, but he did explain specifically how Lesley could have the property passed back to her: through Joyce's exercise of the power of appointment to appoint the trust assets to Lesley.

Lesley notes that the probate court focused on whether Lesley could use the power of attorney to use Joyce's power of appointment to transfer property to herself, and she contends that Rossi conceded that the power of attorney did not give Lesley this power. She further argues Rossi's concession was correct, as the power of attorney, attached to Joyce's declaration, does not permit Lesley to give gifts to herself. Given that affidavits are only admissible in uncontested proceedings, it is not clear that

9

Joyce's declaration or the exhibit attached to it were properly before the probate court. (*Farrant*, *supra*, 67 Cal.App.5th at p. 377.) Even so, had Rossi relied only on the power of attorney to support his claim of mistake, we might agree with Lesley that Rossi's claim of mistake failed as a matter of law, given his concession below that the power of attorney did not allow Lesley to exercise Joyce's power of appointment. However, Rossi was explicit in his written filings and in his argument at the hearing that his mistake argument relied on both Lesley's potential use of the power of attorney to exercise Joyce's power of appointment and Joyce's own personal exercise of the power of appointment. The insufficiency of Rossi's mistake theory based on Joyce's power of attorney therefore does not mean the probate court could deny him an evidentiary hearing regarding his mistake theory based on Joyce's exercise of the power of appointment.[3]

In her second argument, Lesley argues Rossi has not shown he was prejudiced by the probate court's denial of a hearing. This argument largely relies on the same premise as her first, that Rossi did not adequately identify a mistake that would render the trust invalid. As discussed *ante*, Rossi adequately identified his theory of a mistake about Joyce's power of appointment and the evidence he believes would support it. As best we can tell on this

---

[3] In a footnote, Lesley says that she agrees with Rossi that trust assets may not be distributed to her, as it would be contrary to the purpose of the trust to provide for the children's education. But Rossi challenges the validity of the trust because he believes it currently *does* allow Joyce to use the power of appointment in this manner. The parties are therefore not in agreement.

10

record, this theory has a reasonable probability of success, so that the denial of a hearing prejudiced Rossi. (See *People v. Watson* (1956) 46 Cal.2d 818, 836.) If Rossi intended the trust to provide for Joyce's needs during her life and for Lesley and Rossi's children's education after Joyce's death, it is reasonable to believe that he would not have agreed to allow Joyce to divert assets from the children upon her death. To be sure, Rossi may have difficulty establishing that he did not know of the power of appointment, given that it is specifically identified by a subheading in the trust. But given Rossi's offer of his expected testimony, as well as the possibility of testimony he might secure from the attorney who drafted the trust, Rossi has sufficiently demonstrated prejudice to obtain a reversal of the probate court's order.

Lesley does not dispute that Rossi's mistake theory would invalidate the trust. Instead, she faults Rossi for not making clear in the probate court that Joyce's power of appointment was so central to the essence of the transaction that he was entitled to rescission because he would not have executed the trust at all had he known of Joyce's power of appointment, as opposed to merely being entitled to reform the power of appointment provision of the trust. (*Walton, supra,* 218 Cal.App.2d at pp. 545–546 [in determining whether settlor had established right to rescind irrevocable inter vivos trust based on mistake, " '*The mistake must be such that it animated and controlled the conduct of the party; go to the essence of the object in view and not be merely incidental.* The court must be satisfied that but for the

11

mistake the complainant would not have assumed the obligation from which he seeks to be relieved' "], quoting *Reid v. Landon* (1958) 166 Cal.App.2d 476, 483.) Rossi expressly declined at the hearing to elect between rescission and reformation remedies because of the undeveloped evidentiary record. But he nonetheless made clear that he did want to pursue rescission of the trust, and he cited evidence that could support his defense, which is sufficient. He cannot be faulted for admitting, as was proper, that he could not definitively predict which remedy a full evidentiary record would ultimately support.[4]

Finally, Lesley construes Rossi's mistake theory as merely an attempt to gain leverage in the couple's ongoing divorce. We defer such contentions to the probate court, confident in its ability to distinguish between a bona fide mistake about the terms of the trust and a "mere claim of error disguising a new, postdrafting, dispositive intent." (*Bilafer v. Bilafer* (2008) 161 Cal.App.4th 363, 371 [allowing trustor to petition to reform irrevocable trusts does not treat an irrevocable trust as a revocable one].)

Accordingly, we hold that the trial court erred in denying Rossi's request for an evidentiary hearing on his objection that the trust is invalid because it was based on his mistake as to Joyce's power of appointment. Lesley believes Rossi's mistake

---

[4] We leave to the probate court's discretion the question of whether, on remand, to limit an evidentiary hearing on Lesley's petition to a theory of mistake warranting rescission or whether to also consider related arguments concerning reformation or other issues.

theory based on the power of appointment "lacks credibility," and that skepticism may ultimately prove to be well-founded. But such a determination cannot be made without an evidentiary hearing, during which the parties will be permitted to probe Rossi's understanding of the power of appointment and the court can judge the credibility of his mistake theory on a full, post-discovery record.

## DISPOSITION

The probate court's order is reversed.

BROWN, J.

WE CONCUR:

POLLAK, P. J.
STREETER, J.

*Matheson v. Rossi* (A165822)

13